UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>GENE DANIEL LEVOFF<br><br>　　　Defendant. | Civil No. 2:19-5536 |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT <u>GENE DANIEL LEVOFF</u>**

## Table of Contents

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**THE UNDISPUTED FACTS** ..................................................................................................... 2

**ARGUMENT** .............................................................................................................................. 6

    I.      The Court Should Estop Levoff from Relitigating the Same Facts He Admitted to in His Guilty Plea ............................................................................... 6

          A.      The Issues in the SEC and DOJ Proceedings Are Identical ..................... 7

          B.      The Remaining Requirements for Collateral Estoppel Have Also Been Met ............................................................................................. 7

    II.     Levoff's Admissions Establish That He Violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act ......................................... 8

    III.    The Court Should Impose a Penalty of $1,147,440 .......................................... 10

    IV.    The Court Should Order Levoff to Disgorge $382,480 and Pay $57,465 in Prejudgment Interest, But Deem Those Obligations Satisfied by the Forfeiture Order in the Criminal Case ................................................................ 13

    V.     The Court Should Enjoin Levoff Against Future Violations of Exchange Act Section 10(b) and Securities Act 17(a) ......................................................... 14

    VI.    The Court Should Prohibit Levoff from Serving as an Officer or Director of a Public Company ........................................................................................... 15

**CONCLUSION** ......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. C.I.R.*,
    698 F.3d 160 (3d Cir. 2012) ................................................................................... 8

*SEC v. Antar*,
    97 F.Supp.2d 576 (D.N.J. 2000) .......................................................................... 13

*SEC v. Bonastia*,
    614 F.2d 908 (3d Cir. 1980) ................................................................................. 14

*SEC v. Cammarata*,
    2023 WL 5644689 (E.D. Pa. Aug. 31, 2023) .................................................... 6-7

*SEC v. Chapman*,
    2021 WL 199539 (E.D. Pa. Jan. 20, 2021) .......................................................... 14

*SEC v. Chapman*,
    2021 WL 199539 (E.D. Pa. Jan. 20, 2021) .......................................................... 14

*SEC v. Clay Capital Mgmt., LLC*,
    2013 WL 5946989 (D.N.J. Nov. 6, 2013) ................................................. 8, 10-12

*SEC v. Cooper,*
    142 F.Supp.3d 302 (D.N.J. 2015) .................................................................. passim

*SEC v. Desai*,
    145 F. Supp.3d 329 (D.N.J. 2015) ................................................................. passim

*SEC v. Eydelman,*
    2017 WL 4543727 (D.N.J. Oct. 11, 2017) ............................................................ 9

*SEC v. Gentile*,
    939 F.3d 549 (3d Cir. 2019) ................................................................................ 13

*SEC v. Gupta*,
    2013 WL 3784138  (S.D.N.Y. July 17, 2013) .................................................... 12

*SEC v. Hug*,
    2022 WL 855659 (D.N.J. March 22, 2022) .......................................................... 9

*SEC v. Infinity Group Co.*,
    212 F.3d 180 (3d Cir. 2000) ............................................................................. 9-10

*SEC v. Johnson,*
    174 F. App'x 111 (3d Cir. 2006) ....................................................................... 10

*SEC v. Johnson*,
    2004 WL 5561799 (D.N.J. Aug. 27, 2004) ....................................................... 15

*SEC v. LaGuardia*,
    2023 WL 4266014 (S.D.N.Y. June 29, 2023) ..................................................... 6

*SEC v. Mattera*,
    2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013) ....................................................... 8

*SEC v. Paul*,
    2023 WL 2562977 (E.D. Pa. March 17, 2023) ................................................... 7

*SEC v. Rajaratnam,*
    918 F.3d 36 (2d Cir. 2019) ............................................................................ 11-12

*United States ex rel. Doe v. Heart Solutions, Inc.*,
    923 F. 3d 308 (3d Cir. 2019) ............................................................................... 8

*United States v. McGee*,
    763 F.3d 304 (3d Cir. 2014) ................................................................................ 9

*United States v. O'Hagan*,
    117 S. Ct. 2199 (1997) ......................................................................................... 9

## **Statutes**

15 U.S.C. § 77t(e) ........................................................................................................ 15

15 U.S.C. § 78u(d)(2) .................................................................................................. 15

Plaintiff Securities and Exchange Commission ("SEC") submits this memorandum of law in support of its motion (the "Motion"), pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all its claims against defendant Gene Daniel Levoff ("Levoff"). As explained below, the basis for this Motion is the doctrine of collateral estoppel, arising from Levoff's guilty plea in a parallel criminal proceeding. Because there can be no genuine dispute of a material fact, the SEC respectfully asks that the Court grant the Motion.

## PRELIMINARY STATEMENT

This case concerns Levoff's egregious insider trading. The SEC has alleged that Levoff, a senior attorney at Apple, repeatedly traded profitably in Apple stock while in possession of material nonpublic information about Apple's quarterly earnings announcements, in breach of his duty of trust and confidence to Apple and its shareholders. Levoff thus violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5, as well as Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1).

During the relevant period, Levoff was responsible both for Apple's compliance with securities laws and its employees' compliance with Apple's insider trading policies. Levoff, who reported directly to Apple's general counsel, also served on Apple's disclosure committee, which reviewed Apple's financial data before it was disclosed publicly in periodic filings. Levoff exploited his access to this information to purchase Apple stock ahead of positive filings and sell stock ahead of filings likely to disappoint investors. He engaged in this misconduct despite his deep familiarity with the securities laws and Apple's insider trading policies.

Levoff has pled guilty in a parallel criminal proceeding to precisely this conduct. *United States v. Levoff*, 2:19-cr-00780 ("Criminal Proceeding"). In February 2019, the United States Attorney's Office for the District of New Jersey filed a criminal complaint against Levoff. He

1

would eventually enter into a plea agreement that was filed on June 30, 2022. (Criminal Proceeding, ECF No. 53).[1] In that agreement, Levoff pleaded guilty to securities fraud in violation of Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, 18 U.S.C. § 2, and other provisions. As set forth in the plea agreement, and as described below, Levoff admitted that he knowingly and willfully engaged in unlawful conduct virtually identical to what is described in the SEC's Complaint.

Because Levoff has thus admitted that he engaged in the unlawful conduct described in the Complaint, and because Levoff is collaterally estopped from re-litigating those issues in this case, there can be no genuine dispute of material fact. The Court should therefore: grant the SEC's Motion; find Levoff liable; order disgorgement of $382,480 and prejudgment interest of $57,465 but deem those amounts satisfied by Levoff's forfeiture payment in the Criminal Proceeding; impose a penalty of $1,147,440; and enjoin Levoff from future violations of the antifraud provisions of the federal securities laws. The Court should also impose an officer and director bar against Levoff given the egregiousness of his misconduct as well as his role at Apple, his degree of scienter and his personal gain.

## THE UNDISPUTED FACTS

From 2008 to 2013, Levoff was Director of Corporate Law at Apple. SEC's Local Rule 56.1 Statement of Undisputed Material Facts ("SEC 56.1"), filed herewith, at ¶ 1. From 2013 until his termination in September of 2018, he was Senior Director of Corporate Law at Apple, reporting directly to the General Counsel. *Id*. Levoff also served on Apple's Disclosure Committee from September 2008 to July 2018, including as chair of the committee from December 2012 to July 2018. *Id*. Levoff previously held positions at a law firm and a publicly-

---

[1] The plea agreement is also submitted herewith as Exhibit 2 to the Declaration of Elizabeth R. Doisy ("Doisy Decl.").

2

traded company. *Id*.

Apple's stock is traded publicly on the NASDAQ stock market. *Id*. at ¶ 3. Apple employed Levoff at its headquarters in Cupertino, California. *Id*. From approximately 2008 to 2013, Levoff, an attorney, was Apple's Director of Corporate Law. *Id*. In that role, Levoff functioned as the top corporate attorney at Apple, reporting directly to Apple's General Counsel. *Id*. Among other things, Levoff was responsible for overseeing Apple's compliance with securities laws, which included advising others regarding SEC filings and financial reporting. *Id*.

In approximately February 2018, Apple elevated Levoff from the role of Assistant Corporate Secretary to its Corporate Secretary, a title he maintained until September 2018. *Id*. at ¶ 4. His responsibilities included ensuring compliance with Apple's Insider Trading Policy. *Id*. Apple's Insider Trading Policy prohibited the unauthorized disclosure of any nonpublic information acquired in the workplace and the misuse of material nonpublic information in securities trading. *Id*. From approximately September 2008 through July 2018, Levoff served on Apple's Disclosure Committee, and, as a result, had access to and obtained Apple's draft SEC filings and earnings materials before Apple disclosed its quarterly and yearly financial results to the public. *Id*. At ¶ 5.

Levoff served as one of the Disclosure Committee's co-chairpersons from approximately December 2012 through July 2018. *Id*. at ¶ 6. As a Disclosure Committee member and high-ranking Apple lawyer, Levoff owed a fiduciary duty to Apple and its shareholders to protect the material nonpublic information regarding Apple to which he had access. *Id*. Levoff further owed Apple and its shareholders a duty not to use such material nonpublic information for his own personal benefit. *Id*. Additionally, Levoff was subject to certain company-imposed

"blackout periods" that prohibited him and others like him with access to material nonpublic information regarding Apple from engaging in trades involving Apple stock. *Id*.

As a result of his employment at Apple, Levoff obtained material nonpublic information regarding Apple's financial results before Apple disclosed that information to the public. *Id*. at ¶ 7.  Levoff then converted the material nonpublic information to his own use by executing trades involving Apple stock in his accounts at TD Ameritrade and First Republic before Apple disclosed its financial results to the public. *Id*. at ¶ 8.  When Levoff discovered that Apple had strong revenue and net profit for a given financial quarter, he purchased large quantities of Apple stock, which he later sold for a profit after Apple disclosed the positive earnings information to the public and the market reacted to the news. *Id*.  Conversely, when Levoff learned that Apple had lower-than-anticipated revenue and net profit, he sold large quantities of Apple stock, thus avoiding the significant losses that would occur after Apple disclosed the information to the public and the market reacted to the negative news regarding Apple's earnings. *Id*.  Levoff executed the favorable trades involving Apple stock in violation of Apple's Insider Trading Policy and during Apple blackout periods. *Id*. at ¶ 9.

Levoff executed trades in furtherance of the scheme from at least as early as April of 2011 through at least as late as April of 2016. *Id*. at ¶ 10.  When Levoff made these trades, he possessed material nonpublic information about Apple. *Id*.  Levoff's illicit trades included the following:

4

| Trade: | Date: | Shares Sold/Purchased: | Profits/Losses Avoided: |
|---|---|---|---|
| A | July 17, 2015 | 43,750 (sold) | |
| B | July 17, 2015 | 8,700 (sold) | |
| C | July 20, 2015 | 7,000 (sold) | |
| D | July 21, 2015 | 17,678 (sold) | $345,459 (for trades A through D) |
| E | October 26, 2015 | 10,000 (purchased) | $4,748 |
| F | April 21, 2016 | 4,009 (sold) | $32,272 |

*Id*. at ¶ 10.

      Trades A through D above allowed Levoff to avoid losses of $345,459 when, on July 21, 2015, Apple released third quarter 2015 earnings and, by the end of the next day, Apple's stock price declined approximately four percent. *Id*. at ¶ 11. Trade E above earned Levoff $4,748 in illicit trading proceeds when, on October 27, 2015, Apple released its fourth quarter 2015 earnings and, by the end of the next day, Apple's stock price increased by approximately four percent. *Id*. at ¶ 12. On October 28, 2015, Levoff sold the shares he had purchased two days earlier. *Id*. Finally, trade F above allowed Levoff to avoid losses of $32,272 when, on April 26, 2016, Apple announced its second quarter 2016 earnings and, by the end of the next day, Apple's stock price declined by six percent. *Id*. at ¶ 13.[2]

      Levoff acted willfully and knowingly and by use of the means and instrumentalities of interstate commerce in connection with the trades he placed in furtherance of the scheme

---

[2] The SEC's calculations for Levoff's trading profits and losses avoided for Trades A-F appear to differ slightly from the FBI's calculations in connection with the Criminal Proceeding. Unlike the SEC, the FBI appears to have rounded down to the nearest hundred or thousand. Compare Doisy Decl. at ¶¶ 6-8 with Exhibit 1 to the Doisy Decl., Criminal Complaint, at ¶¶ 71, 81, 89.

5

described above. *Id*. at ¶ 14.

## ARGUMENT

"Summary Judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *SEC v. Cooper,* 142 F.Supp.3d 302, 310 (D.N.J. 2015) (citations and quotations omitted in this and all subsequent cites to this opinion). To defeat summary judgment, Levoff "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 311. Otherwise, summary judgment is "appropriate where the record could not lead a rational trier of fact to find for the nonmoving party." *Id*.

**I.     The Court Should Estop Levoff from Relitigating the Same Facts He Admitted to in His Guilty Plea**

Because Levoff, in his plea agreement, has already admitted to the material facts alleged in the SEC's complaint, he cannot carry his burden here to show there is a genuine issue for trial. "A criminal conviction conclusively establishes the defendant's civil liability as to those legal or factual issues that were resolved in the criminal proceeding." *SEC v. Cammarata*, 2023 WL 5644689, at *9 (E.D. Pa. Aug. 31, 2023) (citation and quotation omitted in this and all subsequent cites to this opinion). Courts routinely grant SEC's motions for summary judgment based on collateral estoppel. *See, e.g., Id*. ("Indeed, collateral estoppel applies in the securities context as to any overlapping element between the civil case and related criminal conviction."); *SEC v. Desai*, 145 F. Supp.3d 329, 334 (D.N.J. 2015); *SEC v. LaGuardia*, 2023 WL 4266014, at *3-4 (S.D.N.Y. June 29, 2023) ("The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in the subsequent civil case.") (citation and quotation omitted). Courts apply collateral estoppel where: "(1) the issue sought to be precluded is the same as that involved in the

prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Cammarata*, 2023 WL 5644689 at *9. As explained below, Levoff's guilty plea meets each of these four requirements.

    A.  <u>The Issues in the SEC and DOJ Proceedings Are Identical</u>

Levoff's criminal conviction is based on the same statute and misconduct as the SEC's Complaint. Levoff's plea agreement, which is the primary basis for the undisputed facts set forth above, is simply a condensed version of the Complaint. Like the Complaint, it describes Levoff's role at Apple and explains that he knowingly and willfully breached his duties to Apple and its shareholders by misappropriating Apple's material nonpublic information. The plea agreement and the Complaint focus on the same six trades. (Compare Ex. 2 at 10-11; ECF No. 1 at ¶¶ 26-47). Both are also based on Levoff's violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5. (Compare Ex. 2 at 1 and 2 and Complaint ¶¶ 59-60). The SEC has therefore met collateral estoppel's first requirement. *See, e.g., SEC v. Paul*, 2023 WL 2562977, at *1 (E.D. Pa. March 17, 2023) ("Paul and Quay pleaded guilty to violations of Section 10(b) and Rule 10b-5, and therefore civil liability under Section 17(a), Section 10(b), and Rule 10b-5 has been established."); *Desai*, 145 F. Supp. 3d at 335 (applying collateral estoppel where "[t]he acts that were the predicate of Desai's guilty plea in the parallel criminal action are also the same alleged acts in the instant civil action"); *Cammarata*, 2023 WL 5644689 at *9 (applying collateral estoppel based on guilty plea where it concerned "the same fraudulent scheme" and where the conduct admitted to in the plea satisfied the elements of Section 10(b)).

    B.  <u>The Remaining Requirements for Collateral Estoppel Have Also Been Met</u>

"In situations involving the collateral estoppel effects of a prior criminal judgment, the

7

court must examine the record of the criminal proceeding, including the plea colloquy, to determine specifically what issues were decided." *United States ex rel. Doe v. Heart Solutions, Inc.*, 923 F.3d 308, 316 (3d Cir. 2019). Here, as set forth above, the resolution of Levoff's criminal case overlaps completely with this case. Levoff – represented by capable and experienced counsel – had more than three years between his indictment and guilty plea to litigate the issues addressed in his plea agreement. He nonetheless decided to admit his wrongdoing. *See SEC v. Mattera*, 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013) (finding that a guilty plea in a parallel criminal proceeding "actually litigated and decided the facts necessary to reach a verdict"). Those admissions formed the basis of, and were essential to, the "final and valid judgment" that found him guilty of violating Section 10(b) and Rule 10b-5 and resolved his criminal case. He cannot now claim that he did not misappropriate Apple's material nonpublic information or use that information to trade profitably, all in violation of his duties to Apple and its shareholders. *See SEC v. Clay Capital Mgmt., LLC,* 2013 WL 5946989, at *4 (D.N.J. Nov. 6, 2013) ("Because Vollmar admitted to each of the requisite elements of insider trading in his guilty plea, he is now precluded from re-litigating those issues in this civil matter."); *see also Anderson v. C.I.R.,* 698 F.3d 160, 164 (3d Cir. 2012) (the preclusive effect of guilty pleas "extends to all issues that are necessarily admitted in the plea.").

In sum, because each of the four factors is met here, the Court should estop Levoff from relitigating the facts he admitted to in his plea agreement.

**II.    Levoff's Admissions Establish That He Violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act**

The undisputed facts establish that Levoff's misconduct violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act. "Section 10(b) prohibits the use or employment, in connection with the purchase or sale of any security, . . . of any manipulative

8

device or contrivance in contravention of such rules and regulations as the Commission may prescribe." *SEC v. Hug*, 2022 WL 855659, at *5 (D.N.J. March 22, 2022) (citations and quotations omitted). "Pursuant to its § 10(b) rulemaking authority, the Commission has adopted Rule 10b-5," which provides that: "It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce . . . (a) To employ any device, scheme, or artifice to defraud, or . . . (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." *United States v. O'Hagan*, 117 S. Ct. 2199, 2207 (1997). The language, and the elements required to prove, Section 17(a)(1) and Section 10(b) "are essentially the same." *Desai*, 145 F. Supp. 3d at 335; *Cooper,* 142 F. Supp. 3d at 313; *see also SEC v. Eydelman,* 2017 WL 4543727, at *1 (D.N.J. Oct. 11, 2017) (defendant conceded that plea allocution in parallel insider trading prosecution satisfied both Section 10(b) and 17(a) claims).

"Under the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *Id*. The Third Circuit has explained that "[s]uch trading constitutes a deceptive device under § 10(b) because the insider violates a relationship of trust and confidence with his shareholders by trading on nonpublic information learned as a company insider." *United States v. McGee*, 763 F.3d 304, 310-11 (3d Cir. 2014). The SEC must establish Levoff's scienter, which is a "mental state embracing intent to deceive, manipulate, or defraud[.]" *SEC v. Infinity Group Co*., 212 F.3d 180, 192 (3d Cir. 2000).

Levoff has admitted his liability under these standards. Indeed, it is difficult to imagine a more "classic" example of insider trading. Levoff, a high-ranking attorney who chaired Apple's disclosure committee, SEC 56.1 at ¶¶ 3-6, was the quintessential insider. He had a duty not to

9

use Apple's material nonpublic information for his own benefit, and he was subject to specific Apple trading restrictions. *Id*. at 6. He nonetheless obtained Apple's material nonpublic information and used it to trade profitably.[3] *Id*. at ¶¶ 7-10. And, he did so knowingly and willfully, and by using the means of interstate commerce, including an online brokerage account. *Id*. at 8, 11. The Court should therefore find that Levoff violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act and grant the SEC's Motion for Summary Judgment.

### III.    The Court Should Impose a Penalty of $1,147,440

Section 21A of the Exchange Act, 15 U.S.C. § 78u-1, authorizes the SEC to seek civil penalties in insider trading cases up to three times Levoff's profit obtained or loss avoided. *SEC v. Johnson,* 174 F. App'x 111, 116 (3d Cir. 2006). To determine the amount of a civil penalty, courts assess: "(1) the egregiousness of the defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of the defendant's net worth." *Clay Mgmt.,* 2013 WL 5946989 at *7; *see also Cooper*, 142 F.Supp.3d at 320 (setting forth similar factors).

These factors favor a maximum treble penalty. Levoff's violations were egregious. He was not simply a high-level corporate insider – his job was to ensure that Apple and its employees complied with the securities laws and applicable trading restrictions. And he was not simply someone who reviewed Apple's filings before they became public – he was the chair of the disclosure committee. His misconduct betrayed not just Apple but the market more broadly, which depends on experienced attorneys like Levoff to guide public companies and their employees and ensure their lawful conduct.

---

[3] Levoff has specifically admitted that the nonpublic information he possessed before engaging in the trades at issue – information that led to sudden, substantial shifts in the price of Apple stock – was material. SEC 56.1 at ¶¶ 7, 10, 11-13.

Levoff's conduct was also recurrent, lasting for years. Moreover, given his sophistication and role, he had the highest possible degree of scienter. *See, e.g., SEC v. Rajaratnam,* 918 F.3d 36 (2d Cir. 2019) (affirming treble penalty of more than $92 million where defendant convicted in parallel proceeding was a highly sophisticated and wealthy portfolio manager). Finally, Levoff's TD Ameritrade brokerage statements indicate that he possessed substantial wealth. *See* Exhibits 5, 6, and 7 to the Doisy Decl., Levoff's TD Ameritrade brokerage account statements for July and October 2015 and April 2016, submitted herewith. The account statements show that, as of April 2016, Levoff held more than $12 million in Apple stock, when it was worth approximately $95 per share, factoring in Apple's 2020 stock split. Doisy Decl. at ¶ 10. While the SEC does not have more current information on how Levoff may have disposed of (or retained) his assets, it notes that Apple now trades at substantially more than that. Ex. 4 to the Doisy Decl., Apple stock price chart (reflecting that Apple's current stock price is nearly $167 per share); *see Clay Mgmt.,* 2013 WL 5946989 at *8 (emphasizing that "a defendant's net worth is a critical factor in determining the amount of civil penalty") (citations and quotation omitted); *Desai*, 145 F. Supp. 3d at 338 ("The court must keep in mind that a civil penalty is intended to both punish and serve as a deterrent mechanism."). In light of these factors, the SEC requests a penalty of $1,147,440, which is three times Levoff's total profits and losses avoided for trades A through F above. SEC 56.1 at ¶¶ 11-13.

The Court should impose this penalty even though Levoff has already been sentenced to probation and forfeiture in the parallel criminal proceeding. As the Second Circuit explained in *Rajaratnam*, "Congress expressly anticipated [in enacting Section 21A of the Exchange Act] that at least some insider traders would face both criminal and civil penalties." 918 F.3d at 46. Section 21A is a "broad mandate" that empowers courts to "calculat[e] the size of a penalty

11

necessary to deter misconduct." *Id*. at 44, 45.  As described above, Levoff's misconduct was not simply recurrent, willful, and lucrative – it was an egregious breach of trust by an experienced attorney whose job, among other things, was to ensure that employees at one of the world's most well-known public companies complied with its Insider Trading Policy.  Levoff is the type of wrongdoer for whom the treble penalty was enacted.  *See, e.g., Id*. at 40, 45 (affirming district court judgment imposing treble penalty despite substantial criminal sentence and forfeiture and agreeing with district court that "this case meets every factor favoring trebling").

     A treble penalty is also appropriate notwithstanding his payment of criminal forfeiture. Levoff's forfeiture of approximately $600,000 is roughly equal to his profits and losses avoided from his trades A through F above plus his profits and avoided losses from his 2011 and 2012 trades.  *See* SEC 56.1 at ¶¶ 10-13 (specifying his illicit proceeds from Trades A through F); Ex. 2 at 10 (setting forth his total profits and losses avoided for all trades from all unlawful trades from 2011 to 2016); ECF No. 1 at ¶¶ 48-50 (alleging that Levoff made approximately $245,000 on his 2011 and 2012 trades).  But given the aggravating factors described above, he should not be permitted to break even.  *See SEC v. Gupta*, 2013 WL 3784138, at *2 (S.D.N.Y. July 17, 2013) (imposing additional civil penalties even though defendant had already paid criminal penalties because "imposition of an additional civil penalty is called for here in order to effectuate Congress's purpose of making insider trading a money-losing proposition"); *see also Clay Mgmt.,* 2013 WL 5946989 at *7 ("The civil penalty is intended to serve as a deterrent mechanism, because disgorgement of profits alone merely restores a defendant to his original position without extracting a real penalty for his illegal behavior.") (citation and quotation omitted).  The Court should therefore grant the SEC's request for a penalty of $1,147,440.

### IV. The Court Should Order Levoff to Disgorge $382,480 and Pay $57,465 in Prejudgment Interest, But Deem Those Obligations Satisfied by the Forfeiture Order in the Criminal Case

"Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *Cooper*, 142 F.Supp.3d at 319. The SEC must only show that the amount it seeks to disgorge "reasonably approximates the Defendants' ill-gotten gains." *Id*. "Disgorgement typically includes prejudgment interest so that wrongdoers do not profit from interest-free loans on their ill-gotten gains." *Id*. Prejudgment interest is calculated "based on the IRS rates for underpayment of taxes." *Desai*, 145 F.Supp.3d at 338.

Here, the Court should order Levoff to disgorge $382,480, the total profits and losses avoided for trades A through F. SEC 56.1 at ¶ 11. *See SEC v. Antar,* 97 F.Supp.2d 576, 579 (D.N.J. 2000) (holding that defendants "must be ordered to disgorge any profits made and any losses avoided from their trading of Crazy Eddie stock while in possession of material, nonpublic information . . ."). These are the trades that occurred within the five-year limitations period. *SEC v. Gentile*, 939 F.3d 549, 552 (3d Cir. 2019). The Court should also order Levoff to pay $57,465 in prejudgment interest.[4]

Although the SEC believes Levoff should be ordered to pay disgorgement and prejudgment interest, it is aware that Levoff has already paid over $600,000 in forfeiture and a penalty. The SEC therefore requests the Court deem Levoff's disgorgement and prejudgment

---

[4] As set forth in the Doisy Declaration at ¶ 9, submitted herewith, the SEC calculated prejudgment interest by using July 22, 2015, October 26, 2015, and April 27, 2016 (the dates Levoff earned profits or avoided losses) as the beginning dates and the day the SEC filed its Complaint, February 13, 2019, as the end date, and entering those dates – and the respective proceeds or losses avoided described above – into an SEC program that calculates prejudgment interest by applying the income tax underpayment rate. The outputs of those calculations are also submitted herewith as Exhibit 9 to the Doisy Declaration.

13

interest satisfied by his forfeiture payment.

### V. The Court Should Enjoin Levoff Against Future Violations of Exchange Act Section 10(b) and Securities Act 17(a)

Sections 21(d) and (e) of the Exchange Act and Section 20(b) of the Securities Act authorize district courts to issue injunctive relief in SEC actions. *Cooper*, 142 F.Supp.3d at 319. To issue an injunction, "a court must determine that 'there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct.' This assessment is based on the totality of the circumstances, including, 'the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur.'" *SEC v. Chapman*, 2021 WL 199539, at *6 (E.D. Pa. Jan. 20, 2021) (quoting *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980)).

These factors support an injunction. Levoff was an accomplished attorney with a prestigious job, financial security, and a sophisticated knowledge of the securities laws. Despite that, he repeatedly exploited his position to benefit himself. Although he has pled guilty, the question is whether his misconduct is reasonably likely to recur. The answer is yes; Levoff's utter lack of restraint, and his repeated willingness to place his own interests ahead of those of Apple, its shareholders, and the broader market – together with his financial sophistication and knowledge of the securities laws – make him a likely recidivist. The Court should therefore enjoin Levoff from future violations of Exchange Act Section 10(b) and Securities Act 17(a).

## VI. The Court Should Prohibit Levoff from Serving as an Officer or Director of a Public Company

Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act empower courts to "prohibit . . . permanently or for such period of time as it shall determine, any person who violated the antifraud provisions from acting as officer or director of a public company if the person's conduct demonstrates substantial unfitness to serve as an officer or director." *SEC v. Johnson*, 2004 WL 5561799, at *4 (D.N.J. Aug. 27, 2004) (quoting in slightly modified form Section 20(e) and Section 21(d)(2)). Courts assess unfitness by weighing: "(1) the egregiousness of the defendant's securities violations; (2) previous securities violations, if any, as well as any other breaches of fiduciary duty as a corporate officer or director; (3) the defendant's role or position when he committed the fraud; (4) the degree of the defendant's scienter; (5) the defendant's personal gain from the fraud; and (6) the likelihood of future misconduct."

For the reasons set forth, these factors militate strongly in favor of permanently barring Levoff from serving as an officer or director of a public company. Over a period of years, with the highest possible scienter, he exploited his senior position as an attorney and Corporate Secretary of Apple, disregard his duties to Apple and its shareholders, and lined his own pockets. Few people are less fit than Levoff to be entrusted with the responsibilities of an officer or director of a public company. Worse, allowing Levoff to serve in such a position would only amplify the risk of recidivism. The Court should therefore enter an order permanently barring Levoff from serving as an officer or director of a public company.

## CONCLUSION

For the reasons set forth above, the Court should enter summary judgment against Levoff on the SEC's claims, enter a permanent injunction and officer and director bar, order disgorgement of $382,480 and prejudgment interest of $57,465 and deem those amounts satisfied

15

by Levoff's forfeiture payment in the Criminal Proceeding, and impose a penalty of $1,147,440.

Date:   May 10, 2024

                                               /s/
Daniel J. Maher
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
202-551-4737
202-772-9244 (facsimile)
maherd@sec.gov

Counsel for the SEC