UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>   v.<br><br>GENE DANIEL LEVOFF,<br><br>                Defendant. | Civil Action No. 2:19-5536 |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT GENE DANIEL LEVOFF'S MOTION FOR <u>SUMMARY JUDGMENT</u>**

# Table of Contents

**TABLE OF AUTHORITIES** ................................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** .............................................................................................................................. 2

    THE COURT SHOULD IMPOSE A PENALTY OF $1,147,440 ............................................ 5

        1.   *Levoff's Conduct Was Egregious* ........................................................................ 5

        2.   *Levoff's Conduct Was Not Isolated but Recurrent* ............................................. 6

        3.   *Levoff Acted with a High Degree of Scienter* ..................................................... 7

        4.   *The Amount of Levoff's Illegal Profits* ............................................................... 8

        5.   *The Deterrent Effect of the Penalty in Light of Levoff's Net Worth* ................. 9

**CONCLUSION** ......................................................................................................................... 9

# Table of Authorities

**Cases**

*Kokesh v. SEC*,
    581 U.S. 455 (2017) ............................................................................................. 2

*SEC v. Analytica Bio-Energy Corp.*,
    317 F. Supp. 3d 574 (D.D.C. 2018) ..................................................................... 4

*SEC v. Carr*,
    2020 WL 13303131 (D. Conn. Jan. 10, 2020) .................................................... 5

*SEC v. Clay Capital Mgmt., LLC*,
    2013 WL 5946989 (D.N.J. Nov. 6, 2013) ................................................. 2-3, 6, 9

*SEC v. Ginsburg*,
    362 F.3d 1292 (11th Cir. 2004) ........................................................................... 5

*SEC v. Gunn*,
    2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ................................................ 5, 7

*SEC v. Gupta*,
    2013 WL 3784138 (S.D.N.Y. July 17, 2013) .................................................. 3, 5

*SEC v. Heart Tronics, Inc.*,
    2016 WL 9049642 (C.D. Cal. March 30, 2016) .................................................. 6

*SEC v. Infinity Group Co.*,
    212 F.3d 180 (3d Cir. 2000) ................................................................................. 7

*SEC v. Johnson*,
    2004 WL 5561799 (D.N.J. Aug. 27, 2004) ......................................................... 4

*SEC v. Kelley*,
    2019 WL 3941056 (D.N.J. Aug. 21, 2019) ......................................................... 2

*SEC v. Rajaratnam*,
    918 F.3d 36 (2d Cir. 2019) ............................................................................. 3, 8

*SEC v. Rosenthal*,
    650 F.3d 156 (2d Cir. 2011) ................................................................................ 2

*SEC v. Sargent*,
    329 F.3d 34 (1st Cir. 2000) ................................................................................. 8

*SEC v. Shah*,
     1993 WL 288235 (S.D.N.Y. July 28, 1993) .......................................................................... 8

**Statutes**

15 U.S.C. § 77t(d)(2) ........................................................................................................................ 2
15 U.S.C. § 78u(d)(3)(A) ................................................................................................................. 2
15 U.S.C. § 78u(d)(3)(B) ................................................................................................................. 2

Plaintiff Securities and Exchange Commission submits this reply in further support of its Motion for Summary Judgment ("SEC MSJ") and opposition to Defendant Gene Daniel Levoff's Cross-Motion for Summary Judgment ("Cross-Motion"). The parties do not dispute that the SEC is entitled to a finding that Levoff is liable for violating Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act. Levoff also does not contest the SEC's request for injunctions permanently barring him from future violations of the securities laws and from serving as an officer or director of a public company. (Cross-Motion at 2). The only issue is whether the Court should impose a financial penalty on Levoff. For the reasons set forth below, the Court should grant the SEC's request for a $1,147,440 penalty and deny Levoff's Cross-Motion asking that the Court impose no penalty.

## PRELIMINARY STATEMENT

Levoff argues that he has been punished enough. He claims that the Court's order of restitution, fine, and probation in *United States v. Levoff*, 2:19-cr-00780-WJM, (referred to as "Criminal Action" hereafter) will both deter him from future misconduct and deter others from insider trading. (Cross-Motion at 22-23). In support of that argument, he insists that his behavior was not egregious, that he had only "weak" scienter, and that the Court's restitution order and fine in the Criminal Action, when measured against Levoff's substantial wealth, will be enough to deter future misconduct. The premise of much of Levoff's argument is that his trading was the result of internal psychological distress, an act of "self-sabotage" that he made no effort to conceal. (Cross-Motion at 14-19).

For the reasons set forth below, these arguments are unpersuasive. Levoff, a senior attorney at Apple, was responsible for Apple's compliance with securities laws and its employees' compliance with Apple's insider trading policies. Levoff also served as member and Chair of Apple's disclosure committee, which reviewed Apple's financial data before it was

1

released to the public. Despite these entrusted positions, Levoff traded in advance of six quarterly earnings announcements, three times in 2011 and 2012 and another three times in 2015 and 2016. Levoff's conduct was egregious and involved a high degree of scienter. Moreover, Congress has emphasized that insider trading warrants a severe financial penalty to deter others from engaging in the same misconduct, and that criminal and civil penalties under the securities laws may serve different purposes, and may both be imposed. In the Criminal Action, Levoff's restitution and fine roughly equaled his total trading proceeds or losses avoided. The SEC respectfully argues Levoff's conduct and role, together with the critical goal of general deterrence, warrants a treble penalty.

## ARGUMENT

Congress has granted the SEC authority to seek financial penalties in enforcement actions. As Levoff explains (Cross-Motion at 7-8), Section 21A of the Exchange Act authorizes courts to assess civil penalties for insider trading of up to "three times the profit gained or the loss avoided." *SEC v. Clay Capital Mgmt., LLC*, 2013 WL 5946989, at *7 (D.N.J. Nov. 6, 2013). Importantly, this treble damages provision is unique to insider trading; other violations of the securities laws are capped either at predetermined statutory amounts or an amount equal to a defendant's "gross amount of pecuniary gain." *SEC v. Kelley,* 2019 WL 3941056, at *3 (D.N.J. Aug. 21, 2019) (citing and quoting Sections 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d)(2), and 21(d) of the Exchange Act of 1934, 15 U.S.C. § 78u(d)(3)(B)). Congress has specifically carved out the potentially far more severe penalty for insider trading. *SEC v. Rosenthal*, 650 F.3d 156, 158 (2d Cir. 2011) (quoting 15 U.S.C. § 78u(d)(3)(A)).

The purpose of a penalty is to punish the offender "and deter others from offending in like manner – as opposed to compensating a victim for his loss." *Kokesh v. SEC*, 581 U.S. 455,

2

462 (2017) (citation and quotation omitted). Congress has thus decided that to deter others from insider trading, alone among securities laws violations, a potential treble penalty may be required. As one judge has explained,

> SEC civil penalties, most especially in a case involving such lucrative misconduct as insider trading, are designed, most importantly, to make such unlawful trading a money-losing proposition not just for this defendant, but for all who would consider it, by showing that if you get caught ... you are going to pay severely in monetary terms.

*SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 434 (S.D.N.Y. 2011), *aff'd* 918 F.3d 36 (2d Cir. 2019). The goal, then, is to ensure that courts impose penalties that "effectuate Congress's purpose of making insider trading a money-losing proposition." *SEC v. Gupta*, 2013 WL 3784138, at *2 (S.D.N.Y. July 17, 2013); *see also Clay Capital,* 2013 WL 5946989 at *7 ("The civil penalty is intended to serve as a deterrent mechanism, because disgorgement of profits alone merely restores a defendant to his original position without extracting a real penalty for his illegal behavior.").

These principles apply even where a defendant may also be subject to criminal sanctions. *SEC v. Rajaratnam*, 918 F.3d 36, 46 (2d Cir. 2019) (rejecting defendant's argument that district court was required to "offset" civil penalties by criminal punishment, and explaining that "Congress [in Section 21A] expressly anticipated that at least some insider traders would face both criminal and civil penalties") (emphasis in original); *see also Gupta*, 2013 WL 3784138, at *2 (imposing additional civil penalties).

But despite Congress's objective in enacting the treble civil penalty for insider trading, Levoff insists that he be allowed to break even. He contends that the ancillary costs of his trading – probation, the end of his career as a lawyer, and public embarrassment – together with his $634,000 forfeiture and fine, forecloses the need for a civil penalty. (Cross-Motion at 22-23). Specifically, he claims that the $634,000 means he will not, in fact, break even. (Cross-Motion

3

at 11 n.2). Levoff's reasoning is that he only plead guilty to his three more recent illicit trading episodes, and that because those are the episodes specified in the SEC MSJ, his insider trading in 2011 and 2012 is not "relevant to the case." (*Id*.).

That is simply wrong. First, although the 2011 and 2012 trading episodes were not within the limitations period and cannot be used to calculate the treble penalty, the undisputed facts are these: on three separate occasions in 2011 and 2012, Levoff bought substantial amounts of Apple stock during a blackout period and while in possession of material nonpublic information. (SEC Rule 56.1 Counterstatement of Facts in Response to Levoff's Cross-Motion for Summary Judgment at ¶¶ 1-12).[1] Those purchases were followed almost immediately by Apple's release of extremely positive financial results and Levoff's profitable sales. *Id*. That Levoff profited on those trades is the definition of "relevant." And more generally, courts have found that a pattern of prior similar wrongdoing is relevant to whether a defendant's violations warrant civil penalties or bars. *See, e.g., SEC v. Analytica Bio-Energy Corp.*, 317 F. Supp. 3d 574, 582 (D.D.C. 2018) (imposing maximum penalty because violations were "part of a larger pattern of misconduct"); *SEC v. Johnson*, 2004 WL 5561799, at *4 (D.N.J. Aug. 27, 2004) (one factor in whether to assess bar is "previous securities violations").[2]

In sum, Levoff is indisputably eligible for a civil penalty that should make clear to investors that insider trading is a "money-losing proposition." The question, then, is how much.

---

[1] The Court appeared to recognize that Levoff engaged in six separate episodes of insider trading when it imposed forfeiture of $604,000, an amount almost exactly equal to the total proceeds of all six of his insider trading episodes. (ECF 22-1, SEC MSJ Memo, at 12).

[2] Levoff's claim that he has "no prior record of insider trading . . . violations," (Cross-Motion at 12), is belied by the 2011 and 2012 trading episodes. Whether he has been found liable or not, his record of violative trading is clear.

## THE COURT SHOULD IMPOSE A PENALTY OF $1,147,440

Levoff correctly states that courts consider five factors in determining what penalty to impose for insider trading: "(1) the egregiousness of the defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of the defendant's net worth." *Johnson*, 2004 WL 5561799 at *5. Levoff argues that each of those factors favor the imposition of no penalty. He is, again, incorrect.

1. *Levoff's Conduct Was Egregious*

"Insider trading is a flagrant, deliberate, and serious violation of the federal securities laws; in no sense is it merely technical." *SEC v. Gunn*, 2010 WL 3359465, at *4 (N.D. Tex. Aug. 25, 2010) (finding that defendant's insider trading profit of over $100,000 supported a finding that his conduct was egregious). That is in part because violations of fiduciary duty – one of the elements of an insider trading violation – strongly support a finding that conduct was egregious. *Id*.; *see also SEC v. Ginsburg*, 362 F.3d 1292, 1304-05 (11th Cir. 2004) (reversing district court and finding that breach of fiduciary duty by CEO in twice tipping inside information was egregious conduct). A defendant's position and sophistication can also be aggravating factors. For example, in *SEC v. Carr*, 2020 WL 13303131, *4-5 (D. Conn. Jan. 10, 2020), the court found that even one tip to a romantic partner by a senior officer was egregious. *Id*. ("As the CEO . . ., he had a fiduciary duty not to misuse inside information for personal gain to himself and others."); *see also Gupta*, 2013 WL 3784138 at *2 (insider at "pinnacle of profession" acted egregiously when he breached fiduciary duties to twice tip wealthy associate).

In short, what makes insider trading egregious is not simply the illicit trading – and $600,000 is by no means insubstantial – but the breach of duty that precedes it. Levoff's

5

breaches were profound. Like the defendant in *Gupta*, Levoff was at or near the pinnacle of his profession, a highly compensated and senior attorney at one of the world's biggest and most well-known public companies who was entrusted with significant responsibility for ensuring that Apple and its employees complied with the securities laws, including prohibitions on insider trading. His breaches were not simply to Apple and its shareholders, then, but also to the broader market, which depends on experienced attorneys like Levoff to prevent trading abuses, and thus protect investors' faith in the system. His conduct was extremely flagrant, deliberate, and a serious violation of the federal securities laws.

In arguing that his violations "were not especially egregious" compared to other cases, Levoff focuses on duration and financial benefit. (Cross-Motion at 11-13). He ignores the profound breach of his fiduciary duty and position of trust as a gatekeeper charged with ensuring compliance with Apple's insider trading policies. Moreover, Levoff's trading was not inconsequential; even focusing on just the 2015 and 2016 trading, his violations involved three separate episodes surrounding Apple public disclosures, dozens of trades, and substantial financial benefits. Levoff's reliance on *Clay Capital* is thus inapposite. (*Id*. at 12-13). The defendant in *Clay Capital*: did not reap a personal financial benefit; was a "director of business operations," not a senior securities law specialist responsible for corporate compliance with the securities laws; only tipped twice and had not engaged in earlier breaches; and, critically, unlike Levoff, had no ability to pay a substantial penalty. *Clay Capital*, 2013 WL 5946989 at *1, 8-9.

In short, the egregiousness of Levoff's conduct favors a treble penalty.

2. *Levoff's Conduct Was Not Isolated but Recurrent*

As noted, even focusing on just the 2015 and 2016 trades, Levoff exploited material nonpublic information about three separate public announcements, making dozens of trades in

6

the process. *See, e.g., SEC v. Heart Tronics, Inc.,* 2016 WL 9049642, at *4 (C.D. Cal. March 30, 2016) ("[T]he violations were not isolated but recurrent: Gault served as [CEO] . . . for only three months, and during those three months, Gault committed three independent violations…"). This conduct tracked similar behavior in 2011 and 2012. This factor supports a penalty.

　　3. *Levoff Acted with a High Degree of Scienter*

Levoff does not actually dispute that he acted intentionally and that he knew what he was doing was wrong. Nor could he. Levoff knew, as well as anyone, that insider trading breaches a duty to and deceives his employer and the market, and that it is a "flagrant" and "deliberate" violation of the securities laws. *Gunn*, 2010 WL 3359465, at *4; *SEC v. Infinity Group Co.,* 212 F.3d 180, 191-92 (3d Cir. 2000) ("Scienter is a mental state embracing intent to deceive, manipulate, or defraud."). It does not happen by accident.

Instead, Levoff argues that he had a "relatively low degree of scienter" because his misconduct was an act of "self-sabotage" meant to resolve his psychological and emotional distress. (Cross-Motion at 19). Levoff does not cite a single case that suggests this somehow lessens his degree of scienter. If anything, engaging in self-sabotage suggests that his conduct was highly intentional and that he fully understood the consequences of his actions. And, while the SEC does not engage in speculation about its defendants' subconscious motivations, such as they are, it notes that there are more than a few holes in Levoff's story:

- Levoff, despite his sophistication in the securities laws and access, at the time, to nonpublic information, has produced nothing to support his claim that Apple executives were engaged in the "market manipulation" (Cross-Motion at 17) that supposedly led to his trading episodes;

7

- Levoff's purported desire to be caught is not consistent with never telling anyone, taking a three-year hiatus between 2012 and 2015, and carefully selecting public announcements to trade around where Apple's stock was likely to experience a significant price shift.

Even if true, that Levoff's unlawful behavior was somehow inevitable does not negate the intentionality of his misconduct.

Finally, Levoff suggests that trading in his own name indicates he did not have a high degree of scienter. (*Id*. at 19-20). However, he omits critical context for the far-flung cases he cites. In *SEC v. Shah*, 1993 WL 288235, *6-7 (S.D.N.Y. July 28, 1993), the court declined to impose a penalty only because Shah had been fined $250,000 – more than twice his illicit earnings – and sentenced to 18 months in jail in his parallel criminal proceeding. And, in *SEC v. Sargent*, 329 F.3d 34 (1st Cir. 2000), a case Levoff calls "uniquely applicable" here (Cross-Motion at 10), the two defendants consisted of: 1) an "unsophisticated" defendant who "put two and two together" and invested in one company ahead of one announcement; and 2) a tipper who provided one tip and "neither traded on the information himself nor derived any direct personal benefit." *Id*. at 39-40. Neither is remotely like Levoff. In fact, whether a defendant traded in an account in his own name is not dispositive, especially where, as here, there are other aggravating factors. *See, e.g., Rajaratnam*, 918 F.3d at 44.

In sum, Levoff had a very high degree of scienter, which supports a substantial penalty.

4. *The Amount of Levoff's Illegal Profits*

Levoff made or avoided losses of over $380,000 for the trades to which he pled guilty, and over $600,000 for all of his illicit trading. He made this money (or avoided the losses) virtually risk-free over the course of just a few trading days. His illicit proceeds represent

8

extraordinary short-term returns for a single individual, and an amount of money that virtually all investors would be pleased to obtain so quickly.

### 5. *The Deterrent Effect of the Penalty in Light of Levoff's Net Worth*

"[A] defendant's net worth is a critical factor in determining the amount of civil penalty." *Clay Capital,* 2013 WL 5946989 at *8. Levoff does not seriously try to contest this factor. Nor could he – Levoff is wealthy, yet he is asking the Court to impose no civil penalty. Levoff argues instead that he has "already paid dearly" for his misconduct. (Cross-Motion at 22). But in weighing that argument, the SEC respectfully urges the Court to consider two things: 1) few actual or potential insider traders have the status and reputation that Levoff had, and thus have a lot less to lose in terms of collateral consequences, which is why 2) Congress has emphasized that insider trading must be a *money-losing* proposition. It is Congress's judgment that broad general deterrence depends primarily on financial consequences. That is why, here, the SEC seeks a treble penalty of $1,147,440.

## CONCLUSION

For the reasons set forth above, the Court should grant the SEC's MSJ and deny Levoff's Cross-Motion.

Date:   June 10, 2024

                                         /s/
                                    Daniel J. Maher
                                    U.S. Securities and Exchange Commission
                                    100 F Street, NE
                                    Washington, DC 20549
                                    202-551-4737
                                    202-772-9244 (facsimile)
                                    maherd@sec.gov
                                    Counsel for the SEC