UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GENE DANIEL LEVOFF,<br><br>Defendants. | Civ. No. 2:19-cv-05536 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action by the United States Securities and Exchange Commission ("SEC" or "Plaintiff") against Gene Daniel Levoff ("Levoff" or "Defendant") for insider trading, the SEC moves for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 22. Defendant cross moves for summary judgment. For the reasons set forth below, the SEC's motion for summary judgment is **granted.** Defendant's cross motion for summary judgment is **denied.**

I. BACKGROUND AND PROCEDURAL HISTORY

From 2008 to 2013, Levoff was Director of Corporate Law at Apple. SEC Statement of Undisputed Material Facts ("SEC SUMF") ¶ 1, ECF No. 22-2. From 2013 until his termination in September of 2018, he was Senior Director of Corporate Law at Apple, reporting directly to the General Counsel. *Id.* Levoff also served on Apple's Disclosure Committee from September 2008 to July 2018, including as chair of the committee from December 2012 to July 2018. *Id.* at ¶¶ 1, 5. Thus, he had access to and obtained Apple's draft SEC filings and earnings materials before Apple disclosed its quarterly and yearly financial results to the public. *Id.* Levoff was subject to certain company-imposed "blackout periods" that prohibited him and others like him with access to material nonpublic information from engaging in trades involving Apple stock. *Id.* at ¶ 6. From approximately February 2018 until September 2018, Levoff was also Apple's Corporate Secretary. *Id.* at ¶ 4. His responsibilities included ensuring compliance with Apple's Insider Trading Policy, which prohibited the unauthorized disclose of any nonpublic information acquired in the workplace and the misuse of material nonpublic information in securities trading. *Id.*

From at least as early as April of 2011 through at least as late as April of 2016, Levoff converted the material nonpublic information regarding Apple to his own use by executing trades involving Apple stock in his accounts in violation of Apple's Insider

1

Trading Policy and during Apple blackout periods, realizing profits and avoided losses of over $600,000. *Id.* at ¶¶ 7, 9, 10.

On February 13, 2019, a criminal complaint was filed against Levoff (*US v. Levoff*, 19-cr-00780). Decl. of Elizabeth Doisy ("Doisy Decl.") ¶ 2 (Crim. Compl.), ECF No. 22-3. On October 24, 2019, a federal grand jury returned a twelve-count Indictment charging Levoff with securities fraud and wire fraud in connection with purchase and sale transactions in Apple stock in 2015 and 2016. Cert. of Kevin Marino ("Marino Cert."), ¶ 3 (Indictment), ECF No. 27; Levoff Statement of Undisputed Material Fact ("Def. SUMF") ¶ 2. On June 30, 2022, Levoff entered into an agreement, pleading guilty to Counts 1-6 of the Indictment, and to securities fraud in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2, and other provisions. Doisy Decl. ¶ 3 (Plea Agmt.); SEC SUMF ¶ 2. Levoff admitted that in furtherance of the scheme described in the Indictment, he acted knowingly and willfully in connection with the trades he placed including:

A. On July 17, 2015, Levoff sold approximately 43,750 shares of Apple stock;

B. On July 17, 2015, Levoff sold approximately 8,700 shares of Apple stock;

C. On July 20, 2015, Levoff sold approximately 7,000 shares of Apple stock;

D. On July 21, 2015, Levoff sold approximately 17,678 shares of Apple stock;

E. On October 26, 2015, Levoff purchased approximately 10,000 shares of Apple stock;

F. On April 21, 2016, Levoff sold approximately 4,009 shares of Apple stock.

SEC SUMF ¶¶ 2, 10. The total of Levoff's profits and losses avoided for Trades A through F above is $382,480. *Id.* at ¶ 11.

On December 11, 2023, Levoff was sentenced to four years' probation, 2,000 hours of community service, a fine of $30,000, and forfeiture of $604,000 in realized gains and avoided losses alleged in the Indictment. Def. SUMF ¶ 4; Sentencing Tr. 35:16-37:12. The forfeiture has been satisfied. Marino Cert. ¶ 6 (Satisfaction of Judgment).

Because Levoff has admitted to engaging in insider trading, the SEC moves for summary judgment on the grounds that Levoff is collaterally estopped from re-litigating those issues and thus there are no genuine issues of material fact. Moreover, the SEC deems disgorgement of $382,480 and prejudgment interest of $57,465 satisfied by Levoff's forfeiture payment. Levoff does not challenge finding him liable for insider trading, enjoining him from further violations of the securities laws, and permanently barring him from serving as an officer or director of a public company. The only dispute is whether, Levoff should be ordered to pay a penalty of $1,147,440 - treble Levoff's profit obtained or loss avoided. As discussed below, the SEC's requested monetary penalty is **granted.**

## II. DISCUSSION

### A. Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' ... if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### B. Monetary Penalty

Section 21A of the Securities Exchange Act authorizes the court to impose civil monetary penalties on a person who has engaged in insider trading. 15 U.S.C. § 78u–1(a). "The civil penalty is intended to serve as a deterrent mechanism, because disgorgement of profits alone 'merely restores a defendant to his original position without extracting a real penalty for his illegal behavior.'" *U.S. S.E.C. v. Clay Cap. Mgmt., LLC*, No. 11-05020, 2013 WL 5946989, at *7 (D.N.J. Nov. 6, 2013) (citing H.R.Rep. No. 98-355, 98th Cong., 2d Sess., 7–8 (1984), *reprinted in* 1984 U.S.C.A.A.N. 2274, 2280–81). "The decision whether to impose a monetary penalty that goes beyond disgorgement of illegal profits in order to serve the goal of deterrence rests in the sound discretion of the Court." *S.E.C. v.*

3

*Mellert*, No. 03-0619, 2006 WL 927743, at *1 (N.D. Cal. Mar. 29, 2006) (citing *S.E.C. v. Sargent*, 329 F.3d 34, 42 n. 2 (1st Cir. 2003)). "[A] civil action brought by the SEC for a civil penalty 'may be brought *in addition* to any other actions that the Commission or the Attorney General are entitled to bring." *S.E.C. v. Rajaratnam*, 918 F.3d 36, 46 (2d Cir. 2019) (citing Section 21A(d)(3) (titled "Remedy not exclusive") (emphasis added)). "Thus, Congress expressly anticipated that at least some insider traders would face both criminal and civil penalties." *Id.* (citing *S.E.C. v. Gupta*, 569 F. App'x 45, 48 (2d Cir. 2014) (rejecting argument that treble penalty was inappropriate in light of criminal penalties already imposed)).

The amount of the civil penalty "shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of" the insider-trading activity. *See* 15 U.S.C. § 78u–1(a)(2). To determine the amount of a civil penalty, courts examine several factors, including: "(1) the egregiousness of the defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of defendant's net worth." *Clay Cap. Mgmt.*, 2013 WL 5946989, at *7 (citing *S.E.C. v. Johnson*, No. 02–5490, 2004 WL 5561799 at *5 (D.N.J. Aug. 27, 2004), *aff'd as modified* 174 F. App'x 111 (2006)).

First, while Levoff was not living excessively, his violations were nonetheless especially egregious given that he was the chair of the Apple's Disclosure Committee and his very job was to ensure compliance with securities laws and applicable trading restrictions. His misconduct was not only a breach of fiduciary duty to Apple, but also a betrayal of the market more broadly, which depends on experienced attorneys like Levoff to guide public companies and ensure lawful conduct. *See S.E.C. v. Gunn*, No. 08-1013, 2010 WL 3359465, at *4 (N.D. Tex. Aug. 25, 2010) (noting factors that other federal courts have considered in deeming violation of federal securities laws to be egregious include whether defendant's violation was breach of fiduciary duty and also whether violation was "flagrant and deliberate" rather than "merely technical in nature" (internal citations omitted)).

Second, Levoff has no prior record of securities violations but the illegal trades that he pled guilty to were recurrent over a ten-month period. *See S.E.C. v. Heart Tronics, Inc.*, No. 11-1962, 2016 WL 9049642, at *4 (C.D. Cal. Mar. 30, 2016), (noting "violations were not isolated but recurrent: Gault served as [CEO] . . . for only three months, and, during those three months, Gault committed three independent violations"), *aff'd sub nom. S.E.C. v. Gault*, 751 F. App'x 974 (9th Cir. 2018).

As to the third factor, Levoff's actions were deliberate with a high degree of scienter. Levoff is a seasoned lawyer with a law degree from Stanford University who pled to having

4

engaged in insider trading knowingly and willfully. His mental disorders do not erase his intent. In fact, Levoff describes his securities violations as acts of "self-sabotage;" he did something "so obviously wrong" so that on some level, he was trying to get caught. Def. Br. at 17. Thus, regardless of *why* he was trying to get caught, he acted knowingly and willfully. In this context, Levoff's lack of efforts to conceal his misconduct does not evidence low scienter as much as it consistent with his theory of self-sabotage.

Only the fourth factor weighs in Levoff's favor. The amount of illegal profits and avoided losses was $382,480, substantially less than at issue in typical civil penalty cases. *See e.g., S.E.C. v. Zvodihikov*, No. 16-845, 2020 WL 634184, at *6 (D.N.J. Feb. 10, 2020) (disgorgement amount of over $9.6 million); *S.E.C. v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505, 529 (D.N.J. 1999) (disgorgement of over $2.1 million).

Lastly, although the Court previously considered the deterrent effect of a *custodial sentence* in light of Levoff's forfeiture and loss of his career and reputation, *see* Sentencing Tr. 33:20-34:11; 34:24-35:4, the fifth factor examines the deterrent effect of the *civil monetary penalty* in light of defendant's net worth. "[A] defendant's net worth is a critical factor in determining the amount of civil penalty to award." *Clay Cap. Mgmt.*, 2013 WL 5946989, at *8; *Rajaratnam*, 918 F.3d at 45 ("[O]ther circuits have explicitly approved the consideration of a defendant's wealth in imposing a civil penalty under Section 21A." (collecting cases)); *but see Mellert*, 2006 WL 927743, at *1 (noting that "ability to pay alone cannot tip the balance in favor of the imposition of a civil penalty where other factors are lacking"). As of the date of the Final Presentence Report, Levoff's net worth was more than $13 million. Marino Cert. ¶ 5 (Presentence Investigation Report at 35). In light of Defendant's high net worth, the SEC's requested penalty of $1,147,440 (3x profit obtained or loss avoided) is an appropriate financial penalty to serve as a deterrent effect. *Compare, Johnson*, 2004 WL 5561799, at *5 (imposing penalty of $120,000 where illegal profits were $42,262, securities violations were egregious, defendant had high net worth, acted with scienter, committed previous breaches of fiduciary duty, and was not cooperative or honest with authorities), *with Clay Cap. Mgmt.*, 2013 WL 5946989, at *8 (finding that substantial civil monetary penalty was not appropriate given (1) defendant's precarious financial condition; (2) lack of evidence showing any personal economic benefit; and (3) that offense was defendant's first violation of securities laws and appeared to be isolated incident). Given the facts and circumstances of this case, the civil monetary penalty will not be offset by the criminal forfeiture or fine. *See e.g. Rajaratnam*, 918 F.3d at 46-47 (affirming district court's imposition of civil penalty of over $92.8 million (maximum permissible under statute) without offsetting $53.8 million forfeiture and fine of additional $10 million criminal penalty because court found that in light of facts and circumstances, civil penalty had to be set at level that would show defendant and others that such lucrative insider trading is a "money-losing proposition.").

## III.     CONCLUSION

For the reasons noted above, the SEC's motion for summary judgment is **granted.** Defendant's cross motion for summary judgment is **denied.**

Date: July 2, 2024

WILLIAM J. MARTINI, U.S.D.J.