# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

-----------------------------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

   v.

GENE DANIEL LEVOFF,

        Defendant.

-----------------------------------------------------x

Case No. 2:19-cv-05536-WJM-MAH

Hon. William J. Martini

*(Document filed electronically)*

---

## DEFENDANT GENE DANIEL LEVOFF'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

---

MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant*
*Gene Daniel Levoff*

On the Brief:
    Kevin H. Marino
    John D. Tortorella
    John A. Boyle

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................3

LEGAL ARGUMENT ..............................................................................6

I.     THE EVIDENCE DEMONSTRATES THAT IMPOSITION OF A
       CIVIL PENALTY IS NOT WARRANTED IN THIS CASE. ......................7

CONCLUSION ......................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Fausch v. Tuesday Morning, Inc.*,
   808 F.3d 208 (3d Cir. 2015) ...............................................................................6

*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*,
   683 F.3d 462 (3d Cir. 2012) ...............................................................................6

*Massie v. U.S. Dep't of Hous. & Urb. Dev.*,
   620 F.3d 208 (3d Cir. 2010) ...............................................................................6

*SEC v. Berlacher*,
   No. 07-3800, 2010 U.S. Dist. LEXIS 95759 (E.D. Pa. Sept. 14, 2010)..............8

*SEC v. Clay Cap. Mgt., LLC*,
   No. 2:11-CV-05020-DMC-JBC, 2013 U.S. Dist. LEXIS 159130
   (D.N.J. Nov. 6, 2013)........................................................................ 7, 8, 11, 13

*SEC v. Contorinis*,
   No. 09 Civ. 1043, 2012 U.S. Dist. LEXIS 19961
   (S.D.N.Y. Feb. 3, 2012) ....................................................................................12

*SEC v. Davis*,
   No. 2:20-cv-03271-SB-KS, 2022 U.S. Dist. LEXIS 142073
   (C.D. Cal. July 29, 2022) ..................................................................................19

*SEC v. Dubovoy*,
   No. 15-CV-067076, 2019 U.S. Dist. LEXIS 203765
   (D.N.J. Nov. 25, 2019)......................................................................... 11, 14, 21

*SEC v. Ieremenko*,
   No. 19-CV-505, 2021 U.S. Dist. LEXIS 263333
   (D.N.J. July 29, 2021)......................................................................... 11, 14, 21

*SEC v. Johnson*,
   No. 02-5490, 2004 U.S. Dist. LEXIS 30875
   (D.N.J. Aug. 27, 2004)............................................................................. passim

*SEC v. Megalli*,
   1:13-cv-3783-AT, 2015 U.S. Dist. LEXIS 197881
   (N.D. Ga. Dec. 15, 2015) ............................................................................ 8, 20

*SEC v. Rajaratnam*,
    918 F.3d 35 (2d Cir. 2019) ........................................................ 14, 21

*SEC v. Sargent*,
    329 F.3d 34 (1st Cir. 2003) .................................................. 10, 19, 22

*SEC v. Shah*,
    No. 92-CV-1952, 1993 U.S. Dist. LEXIS 10347
    (S.D.N.J. July 28, 1993) ................................................................. 19

## **Statutes**

15 U.S.C. § 78u-1(a)(2) ................................................................... 2, 7

## **Rules & Regulations**

Fed. R. Crim. P. 11(c)(1)(C) ................................................................ 4

## **Other Authorities**

H.R. Rep. No. 98-355, 98th Cong., 2d Sess., 7-8 (1984), *reprinted in* 1984
    U.S.C.A.A.N. 2274, 2280-81 ............................................................. 8

## PRELIMINARY STATEMENT

Defendant, Gene Daniel Levoff ("Levoff"), respectfully submits this memorandum of law and the accompanying Certification of Kevin H. Marino (the "Marino Certification") in opposition to the summary judgment motion of Plaintiff, United States Securities and Exchange Commission (the "SEC"), and in support of Levoff's cross-motion for summary judgment.

On June 30, 2022, Levoff, a former executive of Apple Inc. ("Apple"), pleaded guilty in *United States v. Gene Levoff*, No. 2:19-cr-00780-WJM (the "Criminal Action"), to insider trading in Apple stock.  At his sentencing on December 7, 2023, the Court rejected the Government's request that Levoff be sentenced to a term of imprisonment, concluding that such a sentence was not necessary for either specific or general deterrence purposes.  In so ruling, the Court relied on a number of factors, including the recommendation of Dr. Catherine M. Barber ("Dr. Barber"), a highly regarded clinical psychologist who concluded that Levoff suffers from four mental health disorders that substantially contributed to his offense.  Rather than impose a term of incarceration, the Court sentenced Levoff to four years' probation with six months of location monitoring and 2,000 hours of community service, ordered him to forfeit $604,000, comprising not the realized-gains and avoided-losses in Apple stock to which he pleaded guilty but the total

1

realized-gains and avoided-losses alleged in the Indictment, and—most significantly for purposes of this motion—imposed a fine of $30,000.

The SEC filed this parallel civil action against Levoff on February 13, 2019, the same day he was charged criminally, based on the same underlying conduct. Now that Levoff has pleaded guilty and been sentenced for that conduct in the Criminal Action, the SEC moves for summary judgment.  In so moving, the SEC not only asks your Honor to summarily impose on Levoff a finding of liability, an injunction against further violations of the securities laws, and a permanent bar from serving as an officer or director of a public company—all relief to which the SEC is undeniably entitled—but also to punish Levoff further with an additional fine of $1,147,440.

That is not appropriate.  The primary purpose of imposing a civil money penalty under Section 21A of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-1(a)(2) (the "Exchange Act"), the provision on which the SEC relies, is to deter future insider-trading violations by the defendant at issue (specific deterrence) and others (general deterrence).  This Court expressly found that the need for specific and general deterrence was adequately served by the sentence it imposed on Levoff in the Criminal Action—including a $30,000 fine, a fraction of the fine the Court could have imposed, in addition to the entire $604,000 in realized gains and avoided

losses charged in the Indictment—and the collateral consequences of his conviction in that action, including the loss of his law license, the loss of his senior position at Apple, the destruction of his reputation, and the emotional and mental damage from his five-year criminal prosecution.  The SEC's request that your Honor rethink that finding and conclude that an additional monetary penalty is needed to deter Levoff and the public from engaging in insider trading should be rejected out of hand.

For these reasons, amplified below, the Court should summarily find Levoff liable for insider trading, enjoin him from further violations of the securities laws, and permanently bar him from serving as an officer or director of a public company, but summarily decline to impose any further monetary penalty upon him.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

From 2013 through September 2018, Levoff served as the Senior Director of Corporate Law for Apple.  (Declaration of Elizabeth R. Doisy dated May 10, 2024 ("Doisy Decl."), Ex. 2, Plea Agr., Schedule A, ¶ 1(b).)  On October 24, 2019, a federal grand jury returned a twelve-count Indictment charging him with securities fraud and wire fraud in connection with purchase and sale transactions in Apple stock in 2015 and 2016.  (Ex. B, Indictment.)[1]

---

[1] The exhibits referenced herein are attached to the Marino Certification unless otherwise noted.

On May 11, 2022, Levoff and the United States Attorney's Office for the District of New Jersey (the "USAO") entered into a written plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the "Plea Agreement"). (Doisy Decl., Ex. 2.) By the terms of that Agreement, Levoff and the USAO agreed to a stipulated sentencing range of zero to 24 months and forfeiture of the full $604,000 in realized gains and avoided losses alleged in the Indictment, well over $200,000 more than the amount to which he pleaded guilty. (*Id.* at 1, 2-3.) Levoff pleaded guilty on June 30, 2022. (Ex. C, Plea Tr.)

At Levoff's sentencing on December 7, 2023, the Court considered a lengthy memorandum of sentencing considerations Levoff submitted, including two expert reports prepared by Dr. Barber. (Ex. A, Sentencing Tr. at 3:14-15, 5:14-15, 7:25-8:2.) In those Reports, Dr. Barber recommended, after an "extensive and long analysis of Mr. Levoff," a probationary sentence, opining that Levoff's conduct was an act of self-sabotage resulting from underlying mental disorders. (*Id.* at 7:25-8:2, 32:4-8, 33:13-18.) Noting Dr. Barber's "extensive and long analysis of Mr. Levoff," (*id.* at 32:6-7), the Court stated that it has gotten Dr. Barber's reports in the past, that to the Court's recollection it is not often she has actually made such a recommendation, and that this was "something that impressed the Court," (*id.* at 32:4-8), as did the USAO's agreement to a sentencing range of zero to 24 months.

4

(*Id.* at 33:3-9.)

The Court also considered the Presentence Investigation Report ("PSR") prepared by the United States Probation Office (the "USPO"). ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Ultimately, the Court rejected the Government's request to sentence Levoff to a term of imprisonment, (Ex. A at 25:3-10), and instead (1) sentenced him to a four-year term of probation (with six months of location monitoring); (2) ordered him to perform 2,000 hours of community service; (3) ordered treatment in a mental health program; (4) ordered forfeiture in the agreed amount of $604,000; and (5) imposed a fine of $30,000. (Doisy Decl., Ex. 3, Judgment.) After stating, "I

think we all agree the big issue here is . . . general deterrence," (Ex. A, Sentencing Tr. at 31:7-9), the Court found that this sentence and the "other considerable requirements" imposed by the Court, along with Levoff's loss of his ability to practice law and his prestige and position in society, were sufficient to satisfy its deterrence concerns. (*Id.* at 34:3-35:4.)  Soon after sentencing, Levoff paid the sum of $604,000 in full and complete satisfaction of the forfeiture money judgment. (Ex. E, Satisfaction of Judgment.)  These cross-motions followed.

## LEGAL ARGUMENT

"'Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'"  *Fausch v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015)  (quoting *Massie v. U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 208, 215 (3d Cir. 2010)).  Further, "'[w]hen a legal standard requires the balancing of multiple factors,'" as the standard for imposing an insider trading civil penalty does, "'summary judgment may still be appropriate even if not all of the factors favor one party,' so long as the evidence 'so favors' the movant that 'no reasonable juror' could render a verdict against it."  *Id.* (quoting *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 471 (3d Cir. 2012)).  Here, in determining whether to impose a civil money penalty for insider trading, courts consider:   "(1) the egregiousness of the

defendant's violations; (2) the isolated or recurrent nature of the violations; (3) the degree of scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of defendant's net worth." *SEC v. Johnson*, No. 02-5490, 2004 U.S. Dist. LEXIS 30875, at *14 (D.N.J. Aug. 27, 2004). Consideration of those factors in this case demonstrates that a civil money penalty is not warranted.

## I. THE EVIDENCE DEMONSTRATES THAT IMPOSITION OF A CIVIL PENALTY IS NOT WARRANTED IN THIS CASE.

Pursuant to Section 21A of the Exchange Act, a district court is authorized "to assess a civil monetary penalty on a person who has engaged in insider trading" with the amount to be determined "'in light of the facts and circumstances'" and not to "'exceed three times the profit gained or loss avoided as a result of the' insider-trading activity." *United States SEC v. Clay Capital Mgmt., LLC*, No. 11-5020, 2013 U.S. Dist. LEXIS 159130, at *21 (D.N.J. Nov. 6, 2013) (quoting 15 U.S.C. § 78u-1(a)(2)). Here, the SEC argues that it is entitled to summary judgment imposing the maximum civil penalty of three times Levoff's insider-trading profits/avoided losses in the amount of $1,147,440. (SEC Br. at 10-11.) To the contrary, the indisputable evidence—most notably, the Court's findings at Levoff's sentencing, including its decision to impose a fine of $30,000 in addition to the agreed forfeiture of the full $604,000 in realized-gains and avoided-losses alleged in the Indictment—demonstrates that no civil penalty is warranted in this case.

7

The insider-trading "civil penalty is intended to serve as a deterrent mechanism, because disgorgement of profits alone 'merely restores a defendant to his original position without extracting a real penalty for his illegal behavior.'" *Clay Capital Mgmt.*, 2013 U.S. Dist. LEXIS 159130, at *21 (quoting H.R. Rep. No. 98-355, 98th Cong., 2d Sess., 7-8 (1984), *reprinted in* 1984 U.S.C.A.A.N. 2274, 2280-81); *see also SEC v. Megalli*, 1:13-cv-3783-AT, 2015 U.S. Dist. LEXIS 197881, at *8 (N.D. Ga. Dec. 15, 2015) ("The purpose of the civil penalty is deterrence."); *SEC v. Berlacher*, No. 07-3800, 2010 U.S. Dist. LEXIS 95759, at *45 (E.D. Pa. Sept. 14, 2010) ("Civil penalties are intended to enhance deterrence against insider trading, and where deterrence fails, to augment the detection and punishment of this behavior.") (cleaned up).  "While disgorgement returns a defendant to his status quo before he violated the law, a civil penalty punishes the individual defendant and warns others against engaging in future securities violations." *Megalli*, 2015 U.S. Dist. LEXIS 197881, at *8.  Thus, "[t]he decision whether to impose a monetary penalty that goes beyond disgorgement of illegal profits in order to serve the goal of deterrence rests in the sound discretion of the Court." *SEC v. Mellert*, No. C03-0619 MHP, 2006 U.S. Dist. LEXIS 14070, at *2-3 (N.D. Cal. Mar. 29, 2006).

Here, the Court found that a four-year term of probation with six months of location monitoring, 2,000 hours of community service, $604,000 in forfeiture, and

a $30,000 fine was sufficient for purposes of deterrence.  (Ex. A, Sentencing. Tr. at 35:16-37:12.)  The Court initially opined at sentencing that "I think we all agree the big issue here is deterrence," specifically "general deterrence."  (*Id.* at 31:7-9.)  In imposing the sentence it thoughtfully crafted, the Court concluded that the need for general deterrence was adequately served by the substantial adverse consequences resulting from Levoff's insider trading, which included not only his lengthy term of probation but also (i) the loss of his ability to practice law; (ii) the loss of his senior position at Apple; (iii) the destruction of his professional and personal reputations; (iv) the five-year process of his criminal prosecution, which was "emotionally and mentally very challenging;" and (v) the significant forfeiture he was ordered to pay. (*Id.* at 33:20-24 ("Now, will others be deterred if he doesn't go to jail?  Well, he lost his law [license].  He's not going to practice law again. He's been through the process, which is, I'm sure, emotionally and mentally very challenging for the last four [actually more than five] years."); *id.* at 34:3-10 ("I don't know how many people in his position wouldn't be deterred by what he's going through right now. You know, if they looked at this case and say, if he doesn't go to jail, we can get away with it.  No, you can't. You'll lose your law [license].  You'll lose your position. You'll lose your prestige.  You're going to pay forfeiture.").)  In light of those consequences, the Court found that a custodial sentence was not necessary for

9

deterrence purposes:

> I don't see that a custodial sentence will actually do any further deterrence. I can't imagine that somebody in a similar position would look at this and say, well this was not -- he didn't go to jail. Well, the sentence I am going to impose is going to impose considerable other requirements on him that are going to be substantial.

(*Id.* at 34:24-35:4.)

That reasoning applies with even greater force here. Because the need for specific and general deterrence is adequately met by (i) the four-year term of probation, forfeiture and fine the Court imposed on Levoff, (ii) the losses of his law license, career and reputation, and (iii) the mental and emotional damage from his lengthy criminal prosecution, no additional monetary penalty is necessary to deter future insider trading. In *SEC v. Sargent*, 329 F.3d 34 (1st Cir. 2003), in reasoning uniquely applicable here, the First Circuit found that the district court "acted within its discretion in refusing to assess civil penalties" because, *inter alia*, that the defendant "was criminally convicted for his actions, and the sanction imposed in the criminal case—a year's probation and a $ 5,000 fine—also tempers the need for an additional monetary penalty." *Id.* at 42.

In determining whether to impose a civil penalty and in what amount, courts in this District consider the following five factors first articulated in *SEC v. Johnson*:

> (1) the egregiousness of the defendant's violations; (2) the isolated

10

or recurrent nature of the violations; (3) the degree of scienter; (4) the amount of illegal profits; and (5) the deterrent effect of the penalty in light of defendant's net worth.

2004 U.S. Dist. LEXIS 30875, at *14; *see also SEC v. Ieremenko*, No. 19-CV-505, 2021 U.S. Dist. LEXIS 263333, at *10 (D.N.J. July 29, 2021); *SEC v. Dubovoy*, No. 15-CV-067076, 2019 U.S. Dist. LEXIS 203765, at *17 (D.N.J. Nov. 25, 2019); *Clay Cap. Mgt.*, 2013 U.S. Dist. LEXIS 159130, at *21-22. Those factors counsel against the imposition of a civil money penalty here.

As to the first and second *Johnson* factors, Levoff's violations were not especially egregious in comparison to that of other insider-trading defendants, and were relatively isolated. *See* 2004 U.S. Dist. LEXIS 30875, at *14. The conduct to which he pleaded guilty involved three discrete episodes of insider trading over a ten-month period, resulting in a total benefit to Levoff of $382,479: (1) four trades in mid-July 2015 that avoided losses of $345,459; (2) one trade in October 2015 that resulted in profits of $4,748; and (3) one trade in April 2016 that avoided losses of $32,272.[2] (SEC's Statement of Undisputed Material Facts, ¶¶ 10-13.) Levoff's

---

[2] The SEC argues that Levoff's insider trading "last[ed] for years" (SEC Br. at 11) but the conduct to which he pleaded guilty and for which the SEC seeks summary judgment as a result of that plea—making it the only conduct relevant to this case—took place over just ten months. The Government similarly argued at sentencing that Levoff's insider trading took place over several years, leading the Court to remind the USAO that Levoff pleaded guilty only to conduct between July 2015 and April 2016. (Ex. A at 27:18-24.) In the same vein, the SEC's argument here that

11

violations did not involve hacking, theft of inside information or, as the Court repeatedly noted at sentencing, any efforts to conceal or disguise his conduct.[3] (*See, e.g.,* Ex. A at 8:20-24, 28:22-25.)  As the Court also noted at sentencing, "[t]here's nothing in the record to show he was living excessively or high and therefore he did this for that extra money." (*Id.* at 29:8-10.)  And there is no dispute that Levoff had no prior record of insider trading or other securities violations.  *See SEC v. Contorinis*, No. 09 Civ. 1043, 2012 U.S. Dist. LEXIS 19961, at *17 (S.D.N.Y. Feb. 3, 2012) (noting that one factor in considering a civil penalty is "whether the defendant has a prior record of securities violations").

As a result, the facts of this case closely resemble those in *Clay Capital Management*, in which the court declined to impose a civil penalty.  There, over the

---

Levoff "should not be permitted to break even," (SEC Br. at 12), overlooks the fact that he forfeited $604,000 despite pleading guilty to realizing gains and avoiding losses totaling $382,479.  He would certainly not be "permitted to break even" if the Court declined the SEC's request that it impose a civil money penalty on top of the $604,000 he forfeited and the $30,000 fine the Court imposed on his criminal conviction.

[3] The SEC argues that Levoff's insider-trading violations were sufficiently egregious to warrant another penalty of more than $1.1 million because "his job was to ensure that Apple and its employees complied with the securities laws and applicable trading restrictions." (SEC Br. at 10.)  But the circumstances of Levoff's offense, including the fact that he made no effort to conceal it, speaks not to the egregiousness of his actions but, as Dr. Barber explained, to the mental and emotional conditions that animated them.

12

course of nearly five months, one defendant passed confidential information about his employer—to which he had access by virtue of his position as a senior executive—to another defendant, who then engaged in trades that yielded more than $2.7 million in illicit profits. *Clay Capital Management*, 2013 U.S. Dist. LEXIS 159130, at *2-3. The SEC argued that an extraordinary civil penalty was appropriate because the insider admitted he acted deliberately in repeatedly tipping his co-defendant with confidential information that he, as a corporate executive, was entrusted to protect. *Id.* at *22. Rejecting that argument, the trial court found that no civil penalty was appropriate as to the insider, *id.* at *23, because, *inter alia*: (a) his conduct was isolated, as it occurred over less than a five-month period and was the first time the defendant had violated the securities laws; and (b) the criminal penalties imposed on the defendant and the injunctive relief and disgorgement of profits ordered in the SEC action would "serve as a sufficient deterrent against any future violations of securities laws." *Id.* at *23-25.

Levoff's conduct is far different from that in cases in this District in which civil money penalties have been imposed. For example, in *SEC v. Zavodchikov*, No. 16-845, 2020 U.S. Dist. LEXIS 23137 (D.N.J. Feb. 10, 2020), the defendant's scheme lasted four years, involved outsiders hacking into the computer systems of two newswire services to steal thousands of unpublished press releases from publicly

13

traded companies, and resulted in $19.5 million in illicit profits from trading on the confidential information in those press releases. *Id.* at *2-3. Similarly, in *Dubovoy*, the defendants engaged in a "massive fraud" that lasted approximately five years, consisted of hacking into the systems of three newswire services to steal more than 100,000 unpublished press releases with non-public financial information and resulted in more than $100 million in illegal profits. *See* 2019 U.S. Dist. LEXIS 203765, at *2-3. Likewise, the scheme in *Ieremenko* involved hacking into the SEC's EDGAR system to steal non-public information on thousands of companies and resulted in illegal gains of more than $4.1 million. *See* 2021 U.S. Dist. LEXIS 263333, at *2-3. Levoff's conduct was nothing like that in *Zavodchikov*, *Dubovoy* and *Ieremenko,* much less *SEC v. Rajaratnam,* 918 F.3d 35 (2d Cir. 2019) (SEC Br. at 11-12), on which the SEC relies, which resulted in gains of $53.8 million.

As to the third *Johnson* factor, Levoff's conduct involved a relatively low degree of scienter. *See* 2004 U.S. Dist. LEXIS 30875, at *14. That is in large part because his diagnosed mental disorders undeniably impacted and clouded his intent to commit insider trading. Dr. Barber, ███████████████████████████████ ███████████████████████████████████████████████████████████████

---

[4] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



15







At Levoff's sentencing, the Court noted that it was "impressed" by Dr. Barber's "extensive and long analysis of Mr. Levoff." (Ex. A, Sentencing Tr. at 32:4-8.) The Court concluded that there is "some credibility to what Dr. Barber suggests and what we all say is that he sabotaged himself for a lot of underlying mental health issues that began when he was in high school because he dropped out

18

of high school for depression and mental health issues" and "he's been struggling with this throughout his adult life." (*Id.* at 33:13-18.) In short, Levoff's mental health disorders indisputably affected his intent and preclude a finding that he possessed a high degree of scienter.

Further, courts have repeatedly found that the absence of efforts to conceal or disguise the defendants' insider trading is strong evidence of a low degree of scienter. *See, e.g., SEC v. Shah*, No. 92-CV-1952, 1993 U.S. Dist. LEXIS 10347, at *21 (S.D.N.Y. July 28, 1993) ("The circumstances of Shah's insider trading do not suggest a very high degree of scienter. While Shah has conceded proof of scienter, the SEC does not allege that he engaged in clandestine trading such as tipping, purchasing stock in the names of other people, or trading in a secret account."); *Sargent*, 329 F.3d at 42 (finding that the district court acted within its discretion in refusing to assess a civil penalty because, *inter alia*, the defendant made no efforts to conceal his isolated transaction; *Mellert*, 2006 U.S. Dist. LEXIS 14070, at *3 (concluding that "an additional civil penalty is not necessary" because, among other things, the defendant "made no effort to conceal his ill-gotten gains") *see also SEC v. Davis*, No. 2:20-cv-03271-SB-KS, 2022 U.S. Dist. LEXIS 142073, at *11 (C.D. Cal. July 29, 2022) (stating that the factors weighing in favor of a penalty included that "the evidence supported the conclusion Defendant tried to conceal his trading

19

after the fact"); *Megalli*, 2015 U.S. Dist. LEXIS 197881, at *8 (noting that "whether the defendant concealed his trading" is a factor in determining whether to impose a civil penalty).

Here, it is undisputed that Levoff made no effort whatsoever to conceal his insider-trading activities, a fact the Court noted repeatedly at sentencing. (Ex. A, Sentencing Tr. at 8:21-22 ("I don't think there was anything on his behalf to try to conceal what he was doing."); *id.* at 28:22-29:3 ("So, I mean, yes, he had this opportunity there, but what none of us can figure out is he did it in his own name. He didn't try to conceal his conduct…. So he had -- deep down he had to figure he was going to get caught.")  In fact, the Court recognized that the unique sentencing range to which the Government agreed—zero to 24 months—was in part a reflection of the puzzling fact that Levoff did absolutely nothing to disguise his conduct:

> I've never seen a plea like this in an 11(c) where it says zero to 24 months.  It might say 4 to 24 or 6 to 24, but somebody in your office also recognized what we're all struggling with here, and that was … but for this crazy conduct — which none of us can explain because he knew he was going to get caught.  ***This was not an insider trading case where I've had where they do it in a different name, they do it in an alias or they do it with a relative.  This was the guy who was supposed to be monitoring this stuff doing it***.

(Ex. A at 33:3-12 (emphasis added).)  Also supporting the conclusion that Levoff's scienter does not warrant a civil penalty is his acceptance of full responsibility for his actions, his admission of his wrongdoing, his guilty plea and his honesty and

20

cooperation with authorities.[5]  *See Zavodchikov*, 2020 U.S. Dist. LEXIS 23137, at *15-16 (the civil-penalty factors include "the defendant's failure to admit to his wrongdoing" and "the defendant's lack of cooperation and honesty with authorities"); *Dubovoy*, 2019 U.S. Dist. LEXIS 203765, at *18 (noting the defendants' failure to accept responsibility as a factor in imposing a civil penalty).

The fourth *Johnson* factor courts consider in determining whether to impose a civil penalty is "the amount of illegal profit." *Johnson*, 2004 U.S. Dist. LEXIS 30875 at *14.  Here, the total benefit Levoff received from his insider-trading activities—$382,479—is substantially less than the sums at issue in typical civil penalty cases.  *See, e.g., Zavodchikov*, 2020 U.S. Dist. LEXIS 23137, at *2-3 ($19.5 million); *Dubovoy*, 2019 U.S. Dist. LEXIS 203765, at *2-3 (more than $100 million); *Ieremenko*, 2021 U.S. Dist. LEXIS 263333, at *2 (more than $4.1 million); *Rajaratnam*, 918 F.3d at 39 ($53.8 million).  Further, Levoff's conduct did not create any substantial losses, or the risk of such losses, to others. ██████████

████████████████████████████████████████

---

[5] ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████

███████████████████████████████  As a result, the fourth *Johnson* factor

weighs strongly in favor of the imposition of no civil penalty.

Consideration of the fifth *Johnson* factor—"the deterrent effect of the penalty

in light of defendant's net worth," 2004 U.S. Dist. LEXIS 30875, at *14—also

demonstrates that the Court should impose no civil penalty on Levoff. As detailed

above, the Court has already found that the four-year term of probation, 2,000 hours

of community service, $604,000 in forfeiture and $30,000 fine imposed at

sentencing, together with the other adverse consequences visited upon Levoff, are

sufficient for specific or general deterrence. (Ex. A, Sentencing. Tr. at 35:16-37:12.)

And while Levoff undeniably has a high net worth, "his ability to pay alone cannot

tip the balance in favor of the imposition of a civil penalty where other factors are

lacking." *See Mellert*, 2006 U.S. Dist. LEXIS 14070, at *4; *see also Sargent*, 329

Fd.3d at 42 (1st Cir. 2003) (finding that net-worth factor alone did not warrant

reversal of denial of civil penalties).

In sum, between his felony conviction, four years of probation, six months of

location monitoring, 2000 hours of community service, $604,000 forfeiture, $30,000

fine, the revocation of his law license, his lifetime bar from serving as an officer or

director of a public company, and the loss of the extraordinary reputation he earned

through a lifetime of good works attested to by those who submitted sentencing

22

letters to this Court, Gene Levoff has already paid dearly for his conduct of conviction. As this Court succinctly put it, "I don't know how many people in his position wouldn't be deterred by what he's going through right now." (Ex. A at 34:3-5). There is thus no need for this Court to add to the consequences of his conduct a civil money penalty, as the SEC requests.

## CONCLUSION

For the foregoing reasons, the Court should summarily find Levoff liable for insider trading, enjoin him from further violations of the securities laws, and permanently bar him from serving as an officer or director of a public company, but summarily decline to impose any further monetary penalty upon him.

Dated: June 3, 2024        Respectfully submitted,
Chatham, New Jersey

MARINO, TORTORELLA & BOYLE, P.C.

By: _____
Kevin H. Marino
John D. Tortorella
John A. Boyle
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant*
*Gene Daniel Levoff*

23