Kevin H. Marino
John D. Tortorella
John A. Boyle
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
*Counsel for Defendant*
*Gene Daniel Levoff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

----------------------------------------------------x

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:19-cv-05536-WJM-MAH |
| | Hon. William J. Martini |
| Plaintiff, | |
| v. | *(Document filed electronically)* |
| GENE DANIEL LEVOFF, | |
| Defendant. | |

----------------------------------------------------x

**DEFENDANT GENE DANIEL LEVOFF'S (1) RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND (2) STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT <u>OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56.1 of the Local Rules of the District of New Jersey, Defendant Gene Daniel Levoff ("Levoff") respectfully submits the following as his (a) response to Plaintiff United States Securities and Exchange Commission's (the "SEC") Local Rule 56.1 Statement of Undisputed Material Facts in support of its Motion for Summary Judgment (the "Statement"); and (b) Local Civil Rule 56.1

Statement of Undisputed Material Facts in support of his Cross-Motion for Summary Judgment.

A.   **Response To Plaintiff's Statement Of Undisputed Material Facts**

1.   From 2008 to 2013, Gene Daniel Levoff was Director of Corporate Law at Apple.  From 2013 until his termination in September of 2018, he was Senior Director of Corporate Law at Apple, reporting directly to the General Counsel. Levoff also served on Apple's Disclosure Committee from September 2008 to July 2018, including as chair of the committee from December 2012 to July 2018.  Levoff previously held positions at a law firm and a publicly-traded company.

Support: ECF No. 6, Levoff's Answer to the Complaint at ¶ 8.

**Response to ¶ 1: Paragraph 1 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue.  Nonetheless, paragraph 1 is ADMITTED, except that it is DENIED that paragraph 8 of Levoff's Answer to the SEC's Complaint supports these statements.  (*See* SEC Complaint, ¶ 8 (jurisdiction allegations), ECF No. 1; Levoff Answer, ¶ 8, ECF No. 6.)**

2.   On February 13, 2019, the United States Attorney's Office for the District of New Jersey filed a criminal complaint against Levoff.  He would eventually enter into a guilty plea agreement that was filed on June 30, 2022.  In that agreement, Levoff pleaded guilty to securities fraud in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 18 U.S.C. § 2, and other provisions.  As set forth in the plea agreement, and as described below, Levoff admitted that he knowingly and

willfully engaged in unlawful conduct virtually identical to what is described in the SEC's Complaint. On December 11, 2023, Levoff was sentenced to four years' probation, a fine of $30,000, and forfeiture of $604,000.

Support: Exhibit 1 to the Declaration of Elizabeth R. Doisy ("Doisy Decl."), Levoff Criminal Complaint; Exhibit 2 to the Doisy Decl., Levoff Guilty Plea at 6 (stipulating to facts) and 9-11; Exhibit 3 to the Doisy Decl., Levoff Judgment and Sentencing at 2, 5-6.

**Response to ¶ 2: Paragraph 2 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue. Nonetheless, paragraph 2 is ADMITTED, except that it is denied that the SEC Complaint and Levoff's Plea Agreement describe the conduct to which he pleaded guilty in "virtually identical" terms. (*Compare* Doisy Cert., Ex. 2 at 9-11 *with* SEC Compl., ECF No. 6.)**

3. Apple's stock is traded publicly on the NASDAQ stock market. Apple employed Levoff at its headquarters in Cupertino, California. From approximately 2008 to 2013, Levoff, an attorney, was Apple's Director of Corporate Law. In that role, Levoff functioned as the top corporate attorney at Apple, reporting directly to Apple's General Counsel. Among other things, Levoff was responsible for overseeing Apple's compliance with securities laws, which included advising others regarding SEC filings and financial reporting.

Support: Ex. 2 at 9.

**Response to ¶ 3**: Paragraph 3 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue.  Nonetheless, paragraph 3 is ADMITTED.

4. In approximately February 2018, Apple elevated Levoff from the role of Assistant Corporate Secretary to its Corporate Secretary, a title he maintained until September 2018.  His responsibilities included ensuring compliance with Apple's Insider Trading Policy.  Apple's Insider Trading Policy prohibited the unauthorized disclose of any nonpublic information acquired in the workplace and the misuse of material nonpublic information in securities trading.

Support: Ex. 2 at 9; ECF No. 6 at ¶ 1.

**Response to ¶ 4**: Paragraph 4 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue.  Nonetheless, paragraph 4 is ADMITTED, except that it is DENIED that paragraph 1 of Levoff's Answer to the SEC's Complaint supports these statements.  (*See* SEC Complaint, ¶ 1 (summary of allegations), ECF No. 1; Levoff Answer, ¶ 1, ECF No. 6.)

5. From approximately September 2008 through July 2018, Levoff served on Apple's Disclosure Committee, and, as a result, had access to and obtained Apple's draft SEC filings and earnings materials before Apple disclosed its quarterly and yearly financial results to the public.

Support: Ex. 2 at 9.

**Response to ¶ 5**:  ADMITTED.

4

6. Levoff served as one of the Disclosure Committee's co-chairpersons from approximately December 2012 through July 2018. As a Disclosure Committee member and high-ranking Apple lawyer, Levoff owed a fiduciary duty to Apple and its shareholders to protect the material nonpublic information regarding Apple to which he had access. Levoff further owed Apple and its shareholders a duty not to use such material nonpublic information for his own personal benefit. Additionally, Levoff was subject to certain company-imposed "blackout periods" that prohibited him and others like him with access to material nonpublic information regarding Apple from engaging in trades involving Apple stock.

Support: Ex. 2 at 9-10.

**Response to ¶ 6: Paragraph 6 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue. Nonetheless, paragraph 6 is ADMITTED.**

7. As a result of his employment at Apple, Levoff obtained material nonpublic information regarding Apple's financial results before Apple disclosed that information to the public.

Support: Ex. 2 at 10.

**Response to ¶ 7: ADMITTED.**

8. Levoff then converted the material nonpublic information to his own use by executing trades involving Apple stock in his accounts at TD Ameritrade and

First Republic before Apple disclosed its financial results to the public. When Levoff discovered that Apple had strong revenue and net profit for a given financial quarter, he purchased large quantities of Apple stock, which he later sold for a profit after Apple disclosed the positive earnings information to the public and the market reacted to the news. Conversely, when Levoff learned that Apple had lower-than-anticipated revenue and net profit, he sold large quantities of Apple stock, thus avoiding the significant losses that would occur after Apple disclosed the information to the public and the market reacted to the negative news regarding Apple's earnings.

Support: Ex. 2 at 10.

**Response to ¶ 8: Paragraph 8 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue. Nonetheless, paragraph 8 is ADMITTED.**

9. Levoff executed the favorable trades involving Apple stock in violation of Apple's Insider Trading Policy and during Apple blackout periods.

Support: Ex. 2 at 10.

**Response to ¶ 9: ADMITTED.**

10. Levoff executed trades in furtherance of the scheme from at least as early as April of 2011 through at least as late as April of 2016, realizing profits and avoided losses of over $600,000. When Levoff executed, and caused to be executed,

these trades, he possessed material nonpublic information about Apple. Certain of these trades included the following:

    A. On July 17, 2015, Levoff sold approximately 43,750 shares of Apple stock;

    B. On July 17, 2015, Levoff sold approximately 8,700 shares of Apple stock;

    C. On July 20, 2015, Levoff sold approximately 7,000 shares of Apple stock;

    D. On July 21, 2015, Levoff sold approximately 17,678 shares of Apple stock;

    E. On October 26, 2015[1], Levoff purchased approximately 10,000 shares of Apple stock;

    F. On April 21, 2016, Levoff sold approximately 4,009 shares of Apple stock.

    <u>Support</u>: Ex. 2 at 10-11; Doisy Decl. at ¶¶ 6-8.

    **<u>Response to ¶ 10</u>: Paragraph 10 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue. Nonetheless, paragraph 10 is ADMITTED.**

---

[1] Although Exhibit 2, the Levoff Plea Agreement, states that Levoff's purchase of 10,000 shares occurred on October 26, 2016, the actual date was October 26, 201**5**, as set forth in Exhibit 1, the Criminal Complaint against Levoff, at ¶¶ 73-81, and as reflected in Exhibit 7 to the Doisy Declaration, the relevant brokerage account statement.

    **<u>Response to Footnote 1</u>:  ADMITTED**

11.     The total of Levoff's profits and losses avoided for Trades A through F above is $382,480, as detailed in paragraphs 11-13.  First, trades A through D allowed Levoff to avoid losses of $345,459 when, on July 21, 2015, Apple released third quarter 2015 earnings and, by the end of the next day, Apple's stock price declined approximately four percent.

Support: Doisy Decl. at ¶ 6; Exhibit 4 to the Doisy Decl., Apple Stock Price Chart for 2015 and 2016; Exhibit 5 to the Doisy Decl., Levoff's July 2015 TD Ameritrade Brokerage Account Statement; Exhibit 6 to the Doisy Decl., Levoff's July 2015 First Republic Securities Company Account Statement.

**Response to ¶ 11: Paragraph 11 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue.  Nonetheless, paragraph 11 is ADMITTED.**

12.     Trade E earned Levoff $4,748 in illicit proceeds when, on October 27, 2015, Apple released its fourth quarter 2015 earnings and, the next day, Levoff sold the shares he purchased two days earlier. Apple's stock price increased by approximately four percent on October 27.

Support: Doisy Decl. at ¶ 7; Ex. 4; Exhibit 7 to the Doisy Declaration, Levoff's October 2015 TD Ameritrade brokerage account statement.

**Response to ¶ 12: Paragraph 12 of the Statement contains several sentences and independent factual assertions, and thus does not comply with Local Civil Rule 56.1(a), which requires the movant to set forth "in separately**

8

numbered paragraphs" each material fact as to which it contends there does not exist a genuine issue. Nonetheless, paragraph 12 is ADMITTED.

13. Trade F allowed Levoff to avoid losses of $32,272 when, on April 26, 2016, Apple announced its second quarter 2016 earnings and, by the end of the next day, Apple's stock price declined by six percent.

Support: Doisy Decl. at ¶ 8; Ex. 4; Exhibit 8 to the Doisy Decl., Levoff's April 2016 TD Ameritrade brokerage account statement.

**Response to ¶ 13: ADMITTED.**

14. Levoff acted willfully and knowingly and by use of the means and instrumentalities of interstate commerce in connection with the trades he placed in furtherance of the scheme described above.

Support: Ex. 2 at 11.

**Response to ¶ 14: ADMITTED.**

B.   **Levoff's Statement of Undisputed Material Facts**

1. From 2013 through September 2018, Levoff served as the Senior Director of Corporate Law for Apple. (Doisy Decl., Ex. 2, Plea Agr., Schedule A, ¶ 1(b).)

2. On October 24, 2019, a federal grand jury returned a twelve-count Indictment charging Levoff with securities fraud and wire fraud in connection with purchase and sale transactions in Apple stock in 2015 and 2016. (Certification of Kevin H. Marino, dated June 3, 2024 ("Marino Cert."), Ex. B, Indictment.)

3. On May 11, 2022, Levoff and the United States Attorney's Office for the District of New Jersey (the "USAO") entered into a written plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the "Plea Agreement"). (Doisy Decl., Ex. 2.)

4. By the terms of that Plea Agreement, Levoff and the USAO agreed to a stipulated sentencing range of zero to 24 months and forfeiture of the full $604,000 in realized gains and avoided losses alleged in the Indictment, well over $200,000 more than the amount to which he pleaded guilty. (Doisy Decl., Ex. 2 at 1, 2-3.)

5. Levoff pleaded guilty on June 30, 2022. (Marino Cert., Ex. C, Plea Tr.)

6. At Levoff's sentencing on December 7, 2023, the Court considered a lengthy memorandum of sentencing considerations Levoff submitted, including two expert reports prepared by Dr. Catherine M. Barber ("Dr. Barber"), a highly regarded clinical psychologist. (Marino Cert., Ex. A, Sentencing Tr. at 3:14-15, 5:14-15, 7:25-8:2.)

7. In those Reports, Dr. Barber recommended, after an "extensive and long analysis of Mr. Levoff," a probationary sentence, opining that Levoff's conduct was an act of self-sabotage resulting from underlying mental disorders. (Marino Cert., Ex. A, Sentencing Tr. at 7:25-8:2, 32:4-8, 33:13-18.)



11



■ ███████████████████████████████████████
████████████████████████████████

■ ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

■ ███████████████████████████████████████
███████████████████████████████████████
█████████████████████

■ ███████████████████████████████████████
███████████████████████████████████████
███████

■ ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████







23. At Levoff's sentencing, the Court noted that it was "impressed" by Dr. Barber's "extensive and long analysis of Mr. Levoff." (Marino Cert., Ex. A, Sentencing Tr. at 32:4-8.)

24. The Court concluded that there is "some credibility to what Dr. Barber suggests and what we all say is that he sabotaged himself for a lot of underlying mental health issues that began when he was in high school because he dropped out of high school for depression and mental health issues" and "he's been struggling with this throughout his adult life." (Marino Cert., Ex. A, Sentencing Tr. at 33:13-18.)

15

25. Noting Dr. Barber's "extensive and long analysis of Mr. Levoff," (Marino Cert., Ex. A, Sentencing Tr. at 32:6-7), the Court stated that it has gotten Dr. Barber's reports in the past, that to the Court's recollection it is not often she has actually made such a recommendation, and that this was "something that impressed the Court," (*id.* at 32:4-8), as did the USAO's agreement to a sentencing range of zero to 24 months. (*Id.* at 33:3-9.)

26. The Court also considered the Presentence Investigation Report ("PSR") prepared by the United States Probation Office (the "USPO"). (Marino Cert., Ex. D, PSR.)

███ ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███
    ███ ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████

██  ████████████████████████████████████████████

████████████████████████████████████████████████

█████████████

30. Ultimately, the Court rejected the Government's request to sentence Levoff to a term of imprisonment, (Marino Cert., Ex. A, Sentencing Tr. at 25:3-10), and instead (1) sentenced him to a four-year term of probation (with six months of location monitoring); (2) ordered him to perform 2,000 hours of community service; (3) ordered treatment in a mental health program; (4) ordered forfeiture in the agreed amount of $604,000; and (5) imposed a fine of $30,000. (Doisy Decl., Ex. 3, Judgment.)

31. After stating, "I think we all agree the big issue here is . . . general deterrence," (Marino Cert., Ex. A, Sentencing Tr. at 31:7-9), the Court found that this sentence and the "other considerable requirements" imposed by the Court, along with Levoff's loss of his ability to practice law and his prestige and position in society, were sufficient to satisfy its deterrence concerns. (*Id.* at 34:3-35:4.)

32. At Levoff's sentencing, the Court found that a four-year term of probation with six months of location monitoring, 2,000 hours of community service, $604,000 in forfeiture, and a $30,000 fine was sufficient for purposes of deterrence. (Ex. A, Sentencing. Tr. at 35:16-37:12.)

33. In imposing the sentence it thoughtfully crafted, the Court concluded that the need for general deterrence was adequately served by the substantial adverse consequences resulting from Levoff's insider trading, which included not only his lengthy term of probation but also (i) the loss of his ability to practice law; (ii) the loss of his senior position at Apple; (iii) the destruction of his professional and personal reputations; (iv) the five-year process of his criminal prosecution, which was "emotionally and mentally very challenging;" and (v) the significant forfeiture he was ordered to pay.  (Ex. A, Sentencing. Tr. at 33:20-24 ("Now, will others be deterred if he doesn't go to jail?  Well, he lost his law [license].  He's not going to practice law again.  He's been through the process, which is, I'm sure, emotionally and mentally very challenging for the last four [actually more than five] years."); *id.* at 34:3-10 ("I don't know how many people in his position wouldn't be deterred by what he's going through right now.  You know, if they looked at this case and say, if he doesn't go to jail, we can get away with it.  No, you can't. You'll lose your law [license].  You'll lose your position. You'll lose your prestige.  You're going to pay forfeiture.").)

34. In light of those consequences, the Court found that a custodial sentence was not necessary for deterrence purposes:

> I don't see that a custodial sentence will actually do any further deterrence.  I can't imagine that somebody in a similar position would look at this and say, well this was not -- he didn't go to jail.  Well, the sentence I am going to impose is going to impose

18

considerable other requirements on him that are going to be substantial.

(Marino Cert., Ex. A at 34:24-35:4.)

35. Soon after sentencing, Levoff paid the sum of $604,000 in full and complete satisfaction of the forfeiture money judgment. (Marino Cert., Ex. E, Satisfaction of Judgment.)

36. The conduct to which Levoff pleaded guilty involved three discrete episodes of insider trading over a ten-month period, resulting in a total benefit to Levoff of $382,479: (1) four trades in mid-July 2015 that avoided losses of $345,459; (2) one trade in October 2015 that resulted in profits of $4,748; and (3) one trade in April 2016 that avoided losses of $32,272. (SEC's Statement of Undisputed Material Facts, ¶¶ 10-13.)

37. Levoff's violations did not involve hacking, theft of inside information or, as the Court repeatedly noted at sentencing, any efforts to conceal or disguise his conduct. (*See, e.g.,* Marino Cert., Ex. A at 8:20-24, 28:22-25.)

38. As the Court noted at sentencing, "[t]here's nothing in the record to show he was living excessively or high and therefore he did this for that extra money." (Marino Cert., Ex. A at 29:8-10.)

39. It is undisputed that Levoff made no effort whatsoever to conceal his insider-trading activities, a fact the Court noted repeatedly at sentencing. (Marino Cert., Ex. A, Sentencing Tr. at 8:21-22 ("I don't think there was anything on his

behalf to try to conceal what he was doing."); *id.* at 28:22-29:3 ("So, I mean, yes, he had this opportunity there, but what none of us can figure out is he did it in his own name. He didn't try to conceal his conduct…. So he had -- deep down he had to figure he was going to get caught.")

40. The Court recognized that the unique sentencing range to which the Government agreed—zero to 24 months—was in part a reflection of the puzzling fact that Levoff did absolutely nothing to disguise his conduct:

> I've never seen a plea like this in an 11(c) where it says zero to 24 months. It might say 4 to 24 or 6 to 24, but somebody in your office also recognized what we're all struggling with here, and that was … but for this crazy conduct — which none of us can explain because he knew he was going to get caught. This was not an insider trading case where I've had where they do it in a different name, they do it in an alias or they do it with a relative. This was the guy who was supposed to be monitoring this stuff doing it.

(Marino Cert., Ex. A at 33:3-12.)

                                                 Respectfully submitted,

                                                 MARINO, TORTORELLA & BOYLE, P.C.
                                                 *Attorneys for Defendant*
                                                 *Gene Daniel Levoff*

Dated: June 3, 2024            BY: _____
      Chatham, New Jersey                   KEVIN H. MARINO